[No. C052243. Third Dist. Nov. 30, 2006.]

JERRY NOBLE KENNEDY, Petitioner, v.
THE SUPERIOR COURT OF COLUSA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Law Offices of Judd C. Iversen, Judd C. Iversen and Michael Clough for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Janis Shank McLean, Ward A. Campbell and Eric L. Christoffersen, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**ROBIE, J.**—Penal Code[1] section 1054.9 allows persons subject to a sentence of death or life in prison without the possibility of parole to file a motion for postconviction discovery to assist in seeking a writ of habeas corpus or an order vacating the judgment. Such a motion is at issue here. Specifically, petitioner Jerry Noble Kennedy seeks a writ of mandate commanding the trial court to fully grant 35 discovery requests the trial court denied in whole or in part.

We conclude Kennedy is not entitled to the relief he seeks. As we will explain, in seeking a discovery order under section 1054.9, the defendant must persuade the trial court that he is entitled to the materials he is requesting. Section 1054.9 allows discovery of "materials . . . to which the . . . defendant would have been entitled at time of trial." (§ 1054.9, subd. (b).) Thus, the defendant must show the trial court he would have been entitled to the materials he is requesting at time of trial—for example, by showing the materials came within the prosecution's constitutional or statutory duty to disclose exculpatory evidence.

Likewise, when the trial court denies a defendant's discovery request under section 1054.9 and the defendant seeks writ relief in the appellate court, the defendant must show the appellate court he would have been entitled to the materials he requested at time of trial. Absent such a showing, the defendant cannot carry his burden of showing the trial court abused its discretion in denying his discovery request.

Here, Kennedy's request for writ relief fails because, without exception, he has not shown he would have been entitled to the materials he requested at time of trial. Accordingly, we will deny Kennedy's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 1993, Glenn Chambers was robbed and shot to death in a restroom at a rest stop off Interstate 5 in Colusa County. (*People v. Kennedy* (2005) 36 Cal.4th 595, 602–603 [31 Cal.Rptr.3d 160, 115 P.3d 472].) Kennedy was arrested for the crimes the next day in Sacramento after authorities traced one of Chambers's credit cards. (*Id.* at pp. 603–604.) Ultimately Kennedy was convicted of robbery and murder and sentenced to death. (*Id.* at p. 602.)

In July 2005, the California Supreme Court affirmed Kennedy's convictions and sentence. (See *People v. Kennedy, supra,* 36 Cal.4th at p. 642.) In

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

November 2005, Kennedy filed a habeas corpus petition in the California Supreme Court. (*In re Kennedy* (No. S138625, petn. filed Nov. 4, 2005).) The following month, Kennedy filed a discovery motion pursuant to section 1054.9[2] in Colusa County Superior Court. Kennedy included 58 separate requests in his discovery motion, most of them for broad categories of materials and some of them containing multiple subparts. Kennedy explained that "[t]he discovery requested . . . is necessary both because it may yield evidence that could have been introduced at [his] trial, and because it may produce leads that will yield [such] evidence . . . ."

In support of Kennedy's motion, one of his attorneys attested that his office had obtained and reviewed all of trial counsel's files, had reviewed discovery obtained from the Colusa County Sheriff's Department by Kennedy's prior habeas corpus attorney, and had reviewed files made available by the Colusa County District Attorney and the Colusa County Sheriff's Department in response to informal discovery requests. Nonetheless, Kennedy's attorney set forth a number of reasons for believing that "the local and state agencies involved in investigating and prosecuting [the case against Kennedy] may still have [discoverable] records in their possession."

The People filed their initial response to Kennedy's discovery motion shortly after the motion was filed. Without addressing most of Kennedy's specific requests, the People contended the court should deny his motion because Kennedy was "attempt[ing] to use section 1054.9 as a fishing expedition . . . pay[ing] little or no heed to its many limitations." Among other things, the People argued that: (1) "in a motion pursuant to section 1054.9, a petitioner must make the necessary showing in 1054.5 in order to obtain discovery beyond what was provided at trial"; (2) "in requesting materials pursuant to section 1054.9, a petitioner must show that the requested materials are not in his or her possession"; (3) to be entitled to an order for the production of documents the prosecution was required to disclose at trial, "a petitioner must, in addition to all the other hurdles of section 1054.9, overcome a presumption that the prosecution properly fulfilled its discovery obligations at trial"; and (4) to succeed on a motion under section 1054.9, "a petitioner must establish a good faith basis to believe the materials requested actually exist."

---

[2] As relevant here, that statute provides as follows: "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c) [relating to access to physical evidence for the purpose of examination], order that the defendant be provided reasonable access to any of the materials described in subdivision (b). [¶] (b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial."

When they appeared in court on the motion, Kennedy and the People apparently agreed to meet and confer before asking the court to rule. After that meeting, the People filed another response. This time, the People responded separately to each request, contending the motion should be denied "except as indicated."

The trial court heard the matter again in January 2006 and took it under submission. In March, the court issued its order, granting some of Kennedy's requests in their original form, granting others with modifications, and denying the remainder.

On March 29, 2006, Kennedy commenced this proceeding by filing a petition for writ of mandate in this court seeking to compel the trial court to grant in full most (but not all) of the various discovery requests the trial court had denied or granted with modifications. We ordered the issuance of an alternative writ of mandate.

## DISCUSSION

At issue here is the trial court's denial, in whole or in part, of 35 different discovery requests. Before addressing those requests, we will address generally Kennedy's right to discovery under section 1054.9, then we will address two overarching arguments Kennedy makes with respect to the trial court's ruling on all of his requests.

### I

### *Discovery Under Section 1054.9*

Section 1054.9 allows a defendant to seek discovery of materials "to which [he] would have been entitled at time of trial." (§ 1054.9, subd. (b).) As the Supreme Court explained in *In re Steele* (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444], while this language is broad enough to make section 1054.9 more than just "a 'file reconstruction statute,'" at the same time the statutory language "does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses." (*Steele*, at pp. 693, 695.) Instead, section 1054.9 "provide[s] only limited discovery"; specifically, "the statute is limited to materials to which the defendant would have been entitled *at the time of trial.*" (*Steele*, at p. 695.)

In *Steele*, the Supreme Court explained that those materials include "materials the prosecution provided at trial but that the defendant can show have since been lost," as well as "materials to which the defendant was *actually* entitled at time of trial, but did not receive." (*In re Steele*, *supra*, 32 Cal.4th at

p. 695.) The court explained that this latter category of materials could be further broken down into three subcategories: (1) "specific materials that the defendant can show the prosecution should have provided (but did not provide) at the time of trial because they came within the scope of a discovery order the trial court actually issued at time of trial or a statutory duty to provide discovery" "or the constitutional duty to disclose exculpatory evidence"; (2) "materials the prosecution should have provided at the time of trial because the defense specifically requested them at that time and was entitled to receive them"; and (3) "materials that the prosecution would have been obligated to provide had there been a specific defense request at trial, but was not actually obligated to provide because no such request was made." (*Id.* at pp. 695, 696, 697.)

Under *Steele*, it is *the defendant* who must show that the materials he is requesting are materials to which he would have been entitled at time of trial to obtain a discovery order pursuant to section 1054.9. (See *In re Steele, supra,* 32 Cal.4th at p. 688 ["section 1054.9's discovery . . . is limited to, specific materials . . . that the defendant can show fall into any of these categories"]; see also *id.* at p. 697.) Thus, the defendant must persuade the trial court that he would have been entitled to the materials he seeks at time of trial, e.g., because the materials came within the scope of a discovery order the trial court actually issued at time of trial or because they came within the prosecution's constitutional or statutory duty to disclose exculpatory evidence.

An appellate court "generally review[s] a trial court's ruling on matters regarding discovery under an abuse of discretion standard." (*People v. Ayala* (2000) 23 Cal.4th 225, 299 [96 Cal.Rptr.2d 682, 1 P.3d 3].) Furthermore, " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Thus, in a petition for writ of mandate seeking review of a trial court's denial of one or more discovery requests under section 1054.9, to demonstrate an abuse of discretion the defendant must convince the appellate court that the materials he seeks are materials to which he would have been entitled at time of trial.

Here, Kennedy contends he was entitled to the materials he requested because those materials fell within the prosecution's constitutional and statutory duties of disclosure.

The constitutional duty of disclosure arises under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], in which the United

States Supreme Court held "the prosecution must disclose to the defense any evidence that is 'favorable to the accused' and is 'material' on the issue of either guilt or punishment." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7 [124 Cal.Rptr.2d 202, 52 P.3d 129].) Under *Brady*, "Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [¶] Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' " (*In re Sassounian* (1995) 9 Cal.4th 535, 544 [37 Cal.Rptr.2d 446, 887 P.2d 527], quoting *United States v. Bagley* (1985) 473 U.S. 667, 678, 682 [87 L.Ed.2d 481, 491–492, 494, 105 S.Ct. 3375].)

In determining the materiality of evidence that was not disclosed, "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " (*Kyles v. Whitley* (1995) 514 U.S. 419, 434 [131 L.Ed.2d 490, 506, 115 S.Ct. 1555].) Furthermore, the materiality of the evidence is "considered collectively, not item by item." (*Id.* at p. 436 [131 L.Ed.2d at p. 507].)

The statutory duty of disclosure on which Kennedy relies arises under subdivision (e) of section 1054.1 (section 1054.1(e)), which is part of California's reciprocal criminal discovery statutes enacted in 1990 by the adoption of Proposition 115. (See *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 363–364 [285 Cal.Rptr. 231, 815 P.2d 304].) In its entirety, section 1054.1 provides as follows:

"The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:

"(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.

"(b) Statements of all defendants.

"(c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged.

"(d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.

"(e) Any exculpatory evidence.

"(f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

Thus, under section 1054.1(e), Kennedy was entitled to the disclosure of "[a]ny exculpatory evidence," whatever that phrase may mean.

With these principles in mind, we turn to Kennedy's arguments.

## II

### Statement of Reasons

In its order on Kennedy's discovery motion, the trial court did not explain any of its rulings on Kennedy's discovery requests. Kennedy contends this was an abuse of discretion. We disagree.

Generally, the reason a trial court gives for its ruling is irrelevant on appeal because "we review the trial court's actual ruling, not its reasons," and "[a] judgment or order correct in theory will be affirmed, even where the trial court's given reasoning is erroneous." (*Punsly v. Ho* (2003) 105 Cal.App.4th 102, 113 [129 Cal.Rptr.2d 89].) Nevertheless, our Supreme Court has stated that "[t]he courts . . . have the inherent power to require a statement of reasons as a judicially declared rule of criminal procedure." (*People v. Martin* (1986) 42 Cal.3d 437, 449 [229 Cal.Rptr. 131, 722 P.2d 905].) "[A] requirement of articulated reasons to support a given decision serves a number of interests. In the first place, . . . the statement of such reasons will frequently be essential to any meaningful review of the decision. Secondly, a requirement of articulated reasons acts as an inherent guard against the careless decision, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision. Finally, articulated reasons aid in preserving public confidence in the decision-making process 'by helping to persuade the parties [and the public] that . . . decision-making is careful, reasoned and equitable.' " (*In re Podesto* (1976) 15 Cal.3d 921, 937 [127 Cal.Rptr. 97, 544 P.2d 1297].)

Here, Kennedy cites no authority for his assertion that a trial court is obligated to state its reasons for denying a discovery request under section 1054.9. Most importantly, Kennedy has not persuaded us a statement of reasons in this circumstance is "essential to meaningful appellate review." (*People v. Martin, supra*, 42 Cal.3d at p. 450.) Regardless of the reason the

trial court may have had for denying any particular discovery request, we will affirm the trial court's ruling unless Kennedy carries his burden of showing the trial court abused its discretion because the trial court could have had *no* reasonable basis for its ruling. Kennedy does not point to any prejudice he will suffer from this approach. Thus, although a statement of reasons is advisable,[3] we conclude it is not required, and therefore the trial court did not abuse its discretion here in failing to provide one.

## III

### *Constitutional Right to Discovery*

In the trial court, Kennedy argued he was entitled to the discovery he was requesting "under both section 1054.9 and *Brady v. Maryland.*" Before this court, Kennedy complains that "[t]he superior court order never addressed [his] argument that under *Brady* . . . , he has an independent federal constitutional right to disclosure of the information that he is requesting."

To the extent Kennedy is suggesting he had a right under *Brady*, independent of section 1054.9, to obtain a court order for discovery to assist him in prosecuting his habeas corpus petition, he has failed to offer any authority supporting that suggestion. Certainly, if Kennedy is able to identify materials to which he would have been entitled at time of trial under *Brady*, and he has requested discovery of those materials in the present motion, then he is entitled to an order for discovery of those materials under section 1054.9 (assuming he has satisfied all other requirements for obtaining such an order). But he has not shown any right to such a discovery order based on *Brady* alone, independent of section 1054.9.

## IV

### *Kennedy's Specific Discovery Requests*

We turn now to the specific discovery requests Kennedy contends the trial court abused its discretion in denying, in whole or in part. In doing so, we reiterate that Kennedy bears the burden of establishing an abuse of discretion. Thus, Kennedy must persuade us the materials he requested were materials to which he would have been entitled at time of trial. As will be shown, Kennedy has failed to do that.

---

[3] We encourage trial courts faced with discovery motions under section 1054.9 to explain the reasons for their rulings because, as noted, a statement of reasons "acts as an inherent guard against careless decisions . . . and . . . aids in preserving public confidence in the decision-making process." (*People v. Martin, supra,* 42 Cal.3d at pp. 449–450.)

3

*Activities of Kennedy*[4]

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning the personal movements, contacts and activities of Jerry Noble Kennedy from March 5, 1993 through March 16, 1993 including but not limited to any and all information known by the Colusa County Sheriff's Department and/or Detective Richard Matranga of the Sacramento County Sheriff's Department."

In their second response to the motion, the People stated they had agreed to provide discovery in response to this request if it was "refined to seek impeachment evidence involving prosecution witness [Detective] Matranga and his alleged focus on Kennedy from the time he was released until his arrest." Otherwise, the People argued, the request should be denied.

The trial court granted this discovery request, but limited it to "providing impeachment evidence involving prosecution witness [Detective] Matranga and his alleged focus on Kennedy from the time he was released from prison until his arrest." Thus, the trial court granted Kennedy's request only to the limited extent the People had already agreed to provide discovery in response to it.

Kennedy contends the trial court's ruling was an abuse of discretion because "if he had requested [this] information on a theory that . . . Detective Matranga kept files on 'outlaw motorcycle gangs'[5] and may have been tracking Kennedy in the ten days before the murder of Mr. Chambers, he would have been entitled to it because there was a plausible basis to believe Matranga's files might contain information that would provide favorable and/or otherwise exculpatory evidence concerning Kennedy's movements including evidence of third party culpability and evidence that could have been used to impeach prosecution witnesses Westbrook, Hancock and Woods."

We conclude Kennedy has failed to show he would have been entitled to the requested materials at time of trial, either under *Brady* or section 1054.1(e). Essentially, Kennedy is requesting a broad category of materials—those concerning his activities in the 10 days before the murder—because he

---

[4] To avoid confusion, in listing the specific discovery requests, we use the numbers Kennedy gave them in his motion and which he uses to refer to them in his petition.

[5] In the penalty phase of his trial, Kennedy acknowledged "sharing membership with his brothers in an outlaw motorcycle group called the 'Sacramaniacs.' " (*People v. Kennedy, supra*, 36 Cal.4th at p. 607.)

contends those materials might include some otherwise unidentified evidence that would have been favorable to him by somehow showing someone else committed the murder or by somehow serving to impeach certain prosecution witnesses.

This justification for Kennedy's discovery request might have sufficed under the California case law that governed discovery in criminal proceedings before the adoption of Proposition 115 in 1990, but it does not suffice under section 1054.9. Under that case law, a criminal defendant was generally entitled to discovery of information that would assist in his defense or be useful for impeachment or cross-examination of adverse witnesses. (*People v. Memro* (1985) 38 Cal.3d 658, 677 [214 Cal.Rptr. 832, 700 P.2d 446].) In making a motion for discovery, the defendant was required to describe only the information sought with some specificity and to provide a plausible justification for disclosure. (See *People v. McPeters* (1992) 2 Cal.4th 1148, 1171 [9 Cal.Rptr.2d 834, 832 P.2d 146].)

Under section 1054.9, however, it is not sufficient for the defendant to simply offer a plausible justification for disclosure of information he has described with some specificity. Instead, as the Supreme Court explained in *Steele*, "section 1054.9's discovery . . . is limited to, specific materials . . . that the defendant can show fall into any of the[] categories" of materials to which the defendant would have been entitled at time of trial. (*In re Steele*, *supra*, 32 Cal.4th at p. 688.) Thus, when a defendant seeks discovery under section 1054.9, he must identify those materials with sufficient specificity to show that he *would*, in fact, have been entitled to *those* materials at time of trial.

Kennedy has not done that here. Instead of requesting specific materials and showing how those materials fell within the prosecution's constitutional duty of disclosure under *Brady* and/or the statutory duty of disclosure under section 1054.1(e), Kennedy has requested a broad array of materials regarding his activities in the 10 days before the murder and asserted, without further explanation, that some of those materials might contain information that would provide evidence of third party culpability or evidence that could have been used to impeach certain prosecution witnesses. This assertion falls far short of showing that Kennedy would have been entitled to the requested materials at time of trial. Although the materials Kennedy requested *might* include evidence favorable to him, they would also likely include evidence that was entirely neutral and might even include evidence unfavorable to him. Since neutral and unfavorable materials are clearly *not* materials to which Kennedy would have been entitled at time of trial even under the broadest reading of section 1054.1(e) and *Brady*, Kennedy's request does not describe materials to which he would have been entitled at time of trial and thus it is

overbroad. The trial court was under no obligation to parse Kennedy's request and issue a discovery order for some subset of materials encompassed by his request. If Kennedy's request, taken as a whole, did not ask for materials to which he would have been entitled at time of trial, then the trial court was justified in denying it.[6]

Additionally, to obtain discovery under section 1054.9 of materials within the scope of section 1054.1(e) and/or *Brady*, a defendant must do more than simply assert, as Kennedy does here, that the materials he seeks might include "evidence of third party culpability" or "evidence that could have been used to impeach [certain] prosecution witnesses." Where the defendant seeks to justify a discovery request based on a theory of third party culpability, the defendant must—at the very least—explain *how* the requested materials would be relevant to show someone else was responsible for the crime. Likewise, where the defendant seeks to justify a discovery request on the ground the requested materials would have been relevant to impeach a prosecution witness, the defendant must—at the very least—explain what that witness's testimony was and how the requested materials could have been used to impeach that testimony.

Kennedy has not offered any such explanation here. Specifically, Kennedy does not explain how materials concerning his activities in the 10 days before the murder would show that someone else committed the murder or could be used to impeach prosecution witnesses Doreen Westbrook, John Hancock, and Ron Woods. Indeed, in arguing these materials could have been used for impeachment purposes, Kennedy does not even attempt to explain who these witnesses were or what role they played in the case. In his introduction to his petition, Kennedy provides some information about Doreen Westbrook and characterizes her as "the prosecution's star witness." However, this is far from sufficient to explain how the requested materials could have been used to impeach her trial testimony.[7]

Absent a *specific* explanation of how the requested materials could have been used for impeachment purposes or to show third party culpability, Kennedy has failed to show that materials regarding his activities in the 10 days before the murder were materials to which he would have been entitled

---

[6] To the extent Kennedy's remaining discovery requests also sought materials that could be neutral or unfavorable, this conclusion applies with equal force to the trial court's ruling on those requests. Accordingly, we will not address this issue further.

[7] From the Supreme Court's opinion affirming Kennedy's convictions, we glean that: (1) Westbrook testified under a grant of immunity that she was with Kennedy at the rest stop when he killed Chambers; (2) Ron Woods testified that Kennedy told him about the shooting; and (3) Detective Richard Matranga testified that John Hancock told him Kennedy bragged about the murder (which Hancock denied). (*People v. Kennedy, supra,* 36 Cal.4th at pp. 604, 617, 623–624.)

at time of trial, either under *Brady* or section 1054.1(e), and thus he has failed to show an abuse of discretion by the trial court in its ruling on this request.[8]

### 4

### *Activities of Doreen Westbrook*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning the personal movements, contacts and activities of Doreen Westbrook from March 5, 1993 through March 16, 1993 including but not limited to records concerning: [¶] a. communications and contacts, including phone conversations, between Doreen Westbrook and Jimmie Westbrook; [¶] b. communications and contacts, including phone conversations, between Doreen Westbrook and the Colusa County District Attorney's Office; [¶] c. communications and contacts, including phone conversations, between Doreen Westbrook and the Colusa County Sheriff's Department; [¶] d. communications and contacts, including phone conversations, between Doreen Westbrook and the Sacramento County District Attorney's Office; [¶] e. communications and contacts, including phone conversations, between Doreen Westbrook and the Sacramento County Sheriff's Department; [¶] f. communications and contacts between Doreen Westbrook and any law enforcement agency of the State of California."

The trial court denied this discovery request in its entirety.

Kennedy contends the trial court abused its discretion in denying this request because "this information could have been used to impeach Westbrook's trial testimony." He also contends the materials he sought might have included "evidence of third party culpability" "on a theory that Mrs. Westbrook may have planned the murder of Mr. Chambers for reasons related to her prior arrests in Colusa County and/or the impending sentencing of her husband in Colusa County Superior Court."

Once again, Kennedy has failed to show an abuse of discretion by the trial court. As with his previous request, this request is overbroad. Beyond that, Kennedy fails to explain how evidence of Doreen Westbrook's activities in the 10 days before the murder could have been used to impeach her trial testimony or to show she was responsible for Chambers's murder.

---

[8] The foregoing reasoning applies with equal force to Kennedy's discovery requests Nos. 5, 30, and 31, which sought, respectively: (1) materials concerning the activities of Ron Woods in the 10 days before the murder; (2) materials concerning the activities of the Sacramaniacs known to Colusa County officials as of March 26, 1993; and (3) materials concerning the activities of the Sacramaniacs obtained by Colusa County officials after March 26, 1993. Accordingly, we need not address those requests further.

On the impeachment issue, Kennedy has not explained what Doreen Westbrook's trial testimony was. Consequently, it is impossible for us to determine how materials concerning her activities in the 10 days before the murder could have been used to impeach that testimony.

On the issue of third party culpability, Kennedy's suggestion that Doreen Westbrook may have planned—and presumably committed—Chambers's murder provides a partial explanation of why he believes the requested materials might be favorable to him, but that explanation does not go far enough. Just as it is not enough for Kennedy to assert the requested materials might provide evidence of third party culpability, it is not enough for Kennedy to assert the requested materials might provide evidence Doreen Westbrook killed Chambers. At the very least, Kennedy must explain *how* the requested materials could be expected to show that she, rather than Kennedy, killed Chambers. He has not done so.

In the introduction to his petition and in a footnote appended to the argument on this request, Kennedy hints at the possibility of some sort of conspiracy connecting the murder of Chambers to Doreen Westbrook's prior contacts with law enforcement in Colusa County and the sentencing of her husband (Jimmie Westbrook) that was to take place in Colusa County a few hours after the murder occurred. Unfortunately, that is as far as he goes. He does not explain what connection he thinks there is between Doreen Westbrook's prior contacts with law enforcement in Colusa County and the murder of Chambers, or between the sentencing of her husband and the murder. He does not explain *why* she would have planned, let alone committed, the murder of Chambers. Vague allegations of a shadowy murder conspiracy are not sufficient to show that the requested materials are materials to which Kennedy would have been entitled at time of trial.

Absent a specific explanation of how materials regarding the activities of Doreen Westbrook in the 10 days before the murder could have been used to impeach her trial testimony or to show she was responsible for the murder, Kennedy has failed to show that he would have been entitled to those materials at time of trial. Accordingly, the trial court did not abuse its discretion in denying this request.[9]

[9] The foregoing reasoning applies with equal force to Kennedy's discovery requests Nos. 10, 11, and 12, which sought, respectively: (1) materials concerning communications between Doreen Westbrook and Colusa County law enforcement officers and/or the Colusa County District Attorney's Office about the arrest, incarceration, and sentencing of her husband, Jimmie; (2) materials concerning communications between Darwin Hutchins and Doreen Westbrook while Hutchins was in the Colusa County Jail between February 3, 1993, and March 17, 1993; and (3) materials concerning communications between Dallas Parcher and Doreen Westbrook while Parcher was in the Colusa County Jail between February 3, 1993, and February 10, 1993. Accordingly, we need not address those requests further.

6

*Certain Criminal Activities of the Westbrooks and/or Woods*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning a) the manufacture, purchase and/or sale of illegal drugs, b) robbery or theft, c) the illegal possession of firearms, and d) prostitution involving Doreen Westbrook (aka Doreen Duclos and Doreen Warrington), Jimmie Westbrook and/or Ronald Woods before March 17, 1993, including but not limited to information known by Detective Richard Matranga of the Sacramento County Sheriff's Department."

In their second response to the motion, the People noted that Jimmie Westbrook "was not a witness in this case" and contended the request should be denied because, among other things, it was "overly-broad in that it asks for records far beyond those necessary for impeachment purposes."

The trial court denied this discovery request in its entirety.

Kennedy contends the trial court abused its discretion in denying this request because "this information could have been used to impeach the trial testimony of prosecution witnesses Westbrook and Woods" and because "if [he] had requested this information before trial on a theory that Mrs. Westbrook and/or Mr. Woods may have had a history of prior involvement in rest stop robberies, or Mrs. Westbrook may have planned or carried out the murder of Mr. Chambers as part of a scheme related to prostitution or drugs, he would have been entitled to it because it would have provided favorable and/or otherwise exculpatory material including evidence of third party culpability."

Again, we find Kennedy's argument insufficient to show an abuse of discretion by the trial court. As for Kennedy's assertion that he would have been entitled to the requested materials at time of trial on a theory of third party culpability, Kennedy's assertion that "Mrs. Westbrook and/or Mr. Woods may have had a history of prior involvement in rest stop robberies, or Mrs. Westbrook may have planned or carried out the murder of Mr. Chambers as part of a scheme related to prostitution or drugs" provides a partial explanation of why he believes some of the requested materials might be favorable to him, but again his explanation does not go far enough. Even assuming Woods had a history of prior involvement in rest stop robberies, Kennedy fails to explain how materials concerning any such crimes could have been used to exculpate Kennedy in Chambers's murder. Similarly, Kennedy fails to explain how materials relating to Doreen Westbrook's prior

involvement with prostitution and/or drugs could have been used to show that she planned or carried out the murder.

As for the assertion that Doreen Westbrook may have had a history of prior involvement in rest stop robberies, knowing that Westbrook was present at the rest stop when the robbery and murder of Chambers occurred certainly explains why materials related to any prior rest stop robberies in which she was involved might be relevant to show third party culpability. The problem is that Kennedy's request for materials goes far beyond the asserted justification. If Kennedy had specifically requested materials evidencing Doreen Westbrook's prior involvement in rest stop robberies, then perhaps he would have been able to show he would have been entitled to those materials at time of trial (assuming he could otherwise demonstrate those materials fell within the prosecution's duty of disclosure under *Brady* or section 1054.1(e)). But Kennedy made his request far broader than his justification, and as we have explained, the trial court was not obliged to parse Kennedy's request and issue a discovery order for some subset of materials encompassed by the request.

As for Kennedy's assertion that he would have been entitled to the requested materials at time of trial because they could have been used to impeach Doreen Westbrook and Ron Woods, we acknowledge that criminal activity of the sort Kennedy has described may be used for impeachment purposes. Nevertheless, Kennedy's argument fails for at least two reasons. First, to the extent Kennedy's request rests on his asserted right to these materials under *Brady*, the mere fact that evidence could be used to impeach a prosecution witness does not make that evidence subject to disclosure under *Brady*. Showing that evidence could have been used for impeachment purposes satisfies the requirement that the evidence must be "favorable" to the defendant; however, to fall within the constitutional duty of disclosure, the evidence must also be "material"—that is, it must be of such significance that it raises a reasonable probability the result at trial would have been different if it had been disclosed to the defense. (*In re Sassounian, supra*, 9 Cal.4th at pp. 543–544.)

Kennedy has made no effort to show how evidence that the Westbrooks and/or Woods engaged in narcotics crimes, robbery or theft, the illegal possession of firearms, or prostitution before the murder would have been material, within the foregoing definition of that term, if used to impeach Doreen Westbrook and/or Ron Woods. Even assuming one or both of these witnesses were key or pivotal to the prosecution's case, the evidence Kennedy has sought (assuming it exists) would not necessarily have been material in the sense that it would have created a reasonable probability of a different result. It is possible that an extensive amount of impeachment

materials were already offered at trial for these witnesses and that the presence of some additional impeachment evidence might not have made any difference to the credibility of their testimony. We cannot determine if that is the case, however, because Kennedy has made no attempt to address the materiality element of the constitutional duty of disclosure. Having failed to make any showing of materiality, Kennedy has failed to show that he would have been entitled to the materials he requested under *Brady*.

Second, to the extent Kennedy's request rests on his asserted right to these materials under section 1054.1(e), Kennedy fails to offer any argument on the intended scope of that statute. This omission is significant because it is not clear whether this section was intended to encompass impeachment evidence or whether it was intended to include a materiality element like the constitutional duty of disclosure under *Brady*.

On the question of whether section 1054.1(e) encompasses impeachment evidence, the term "exculpatory evidence" can be read broadly to encompass impeachment evidence or narrowly to exclude such evidence. At its broadest, "exculpatory" means "[c]learing or tending to clear from alleged fault or guilt." (Black's Law Dict. (5th ed. 1979) p. 508, col. 1.) Under this broad definition, evidence which tends to impeach the testimony of a prosecution witness and thus undermine the prosecution's assertion of guilt could be viewed as "exculpatory evidence." On the other hand, the term "exculpatory evidence" has also been used in the *Brady* context to mean something distinct from impeachment evidence. For example, in *United States v. Bagley* (1985) 473 U.S. 667 [87 L.Ed.2d 481, 105 S.Ct. 3375], the Supreme Court explained that "[i]mpeachment evidence . . . *as well as* exculpatory evidence, falls within the *Brady* rule." (*Id.* at p. 676 [87 L.Ed.2d at p. 490], italics added.)

Whether the electorate intended to use the term "exculpatory evidence" in its broad sense or in its narrow sense in section 1054.1(e) is not entirely apparent. It is significant to note, however, that subdivision (d) of the statute requires the disclosure of a very specific type of impeachment evidence, namely, "The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial." (§ 1054.1, subd. (d).) If the term "exculpatory evidence" in subdivision (e) is read in its broad sense and thus deemed to encompass *all* impeachment evidence, then subdivision (d) of the statute would be rendered superfluous—something that is to be avoided in the interpretation of statutes. (See *In re J. W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363] ["One principle [of statutory interpretation] assumes that every part of a statute serves a purpose and that nothing is superfluous"].) Accordingly, there is reason to think the electorate intended to use the term "exculpatory evidence" in its narrow sense and thus did *not* intend section 1054.1(e) to require the disclosure of impeachment evidence.

On the question of whether section 1054.1(e) includes a materiality element like the constitutional duty of disclosure under *Brady*, some commentators have concluded it does. (See Pipes & Gagen, Cal. Criminal Discovery (3d ed. 2003) Materiality Requirement, § 3:36, p. 324 ["The correct construction of the words 'exculpatory evidence' in Pen C § 1054.1(e) is to interpret that language as an alternative way of expressing the *Brady* rule: the duty of the prosecutor to disclose to a defendant all *material exculpatory evidence*"].)

We raise these issues only to show that the intended scope of the term "exculpatory evidence" in section 1054.1(e) is far from clear. Unfortunately, Kennedy has entirely failed to address the intended scope of the statute—a failure that is fatal to his argument on appeal. (See *People v. Kelly* (1999) 72 Cal.App.4th 842, 847, fn. 3 [85 Cal.Rptr.2d 430] [the failure to properly develop an argument is fatal on appeal].) Absent a properly developed argument as to the meaning of the term "exculpatory evidence" in section 1054.1(e), Kennedy has failed to show that he would have been entitled to the materials he requested at time of trial under that section and has thus failed to show the trial court abused its discretion in denying this discovery request.[10]

7

*Doreen Westbrook's Arrests in Colusa County*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning the arrests of Doreen Westbrook (aka Doreen Warrington) in Colusa County on or about December 25, 1992 and February 3, 1993, including but not limited to [¶] a. the names of all law enforcement officers and employees of the Colusa County District Attorney's office who had communications and contact with Doreen Westbrook (aka Doreen Warrington) in connection with these arrests, and the dates and times of any such communications or contacts; [¶] b. any and all records, of any kind and in any form, of investigations related to these arrests; [¶] c. any and all records, of any kind and in any form, concerning plea agreements, negotiations or deals related to the disposition of charges arising out of these arrests."

The trial court denied this request in its entirety.

Kennedy contends the trial court abused its discretion in denying this request because "this information could have been used to impeach the trial

---

[10] To the extent Kennedy relies on section 1054.1(e) to justify the remainder of his discovery requests as well, this conclusion applies with equal force to those requests. Accordingly, we will not address this issue further.

testimony of prosecution witnesses Westbrook, Markss, Bell and Shadinger." He also contends that "if [he] had requested this information before trial on a theory that Mrs. Westbrook may have planned the murder of Mr. Chambers for reasons related to her prior arrests in Colusa County and/or the impending sentencing of her husband in Colusa County Superior Court, he would have been entitled to it because it would have provided favorable and/or otherwise exculpatory material including evidence of third party culpability."

Again, Kennedy has failed to show an abuse of discretion by the trial court. Like most of the previous requests, this request was overbroad. Beyond that, Kennedy fails to explain how materials concerning Doreen Westbrook's arrests in Colusa County before the murder could show she was responsible for Chambers's murder, fails to explain how such materials could have been used to impeach the testimony of the specified witnesses, fails to address the materiality element of the constitutional duty of disclosure, and fails to show he would have been entitled to these materials under section 1054.1(e).[11]

On the impeachment issue, Kennedy's argument also fails for another reason. Whether premised on *Brady* or section 1054.1(e), Kennedy's discovery request relies on the proposition that records concerning Doreen Westbrook's arrests could have been used to impeach her. However, that is not necessarily true. Certainly evidence of charges pending against a prosecution witness *at the time of trial* is relevant for impeachment purposes. (See *People v. Coyer* (1983) 142 Cal.App.3d 839, 842–843 [191 Cal.Rptr. 376] [pending charges may tend to show a witness is seeking leniency through testifying, regardless of any express promises of leniency or immunity].) The problem here is that Kennedy has not suggested whether Doreen Westbrook's arrests in Colusa County before the murder resulted in charges, let alone whether those charges were still pending at the time of his trial. Nor has he offered any reason for believing that the fact or details of her arrests would have been relevant to her credibility as a witness.

Under these circumstances, Kennedy has again failed to show the trial court abused its discretion in denying his discovery request.

8

*Doreen Westbrook's Arrests in Sacramento County*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning arrests of Doreen Westbrook (aka Doreen

---

[11] The foregoing reasoning applies with equal force to Kennedy's discovery request No. 9, which sought materials concerning communications between Doreen Westbrook and Colusa County law enforcement officers and/or the district attorney's office before March 15, 2003. Accordingly, we need not address that request further.

Warrington) in Sacramento County, including but not limited to arrests in March 1990, May 1990, June 1990, August 1991, October 1991, April 1992, June 1992, July 1992, and including but not limited to [¶] a. the names of all law enforcement officers who had communications and contact with Doreen Westbrook (aka Doreen Warrington, Doreen Duclos, Doreen Lenore) in connection with these arrests, and the dates and times of any such communications or contacts; [¶] b. any and all records, of any kind and in any form, of investigations related to these arrests; [¶] c. any and all records, of any kind and in any form, of the disposition of charges including probation arising out of these arrests; [¶] d. any and all records, of any kind and in any form, concerning plea agreements, negotiations or deals related to the disposition of charges arising out of these arrests."

The trial court denied this request in its entirety.

Kennedy contends the trial court abused its discretion in denying this request because "this information could have been used to impeach Westbrook's testimony by providing evidence that she had a prior history of contacts and cooperation with law enforcement, a habit of snitching in exchange for leniency and other benefits, and/or had been released from probation in Sacramento as a result of her statements and testimony against [him]." He also contends "this information could have been used to impeach Detective Matranga by showing that he had a prior history of contacts with Westbrook, [Kennedy] and/or other material witnesses."

We find no abuse of discretion in the trial court's denial of this request. First, Kennedy's request is once again overbroad. Of course, to the extent Doreen Westbrook did, in fact, have "a habit of snitching in exchange for leniency and other benefits, and/or had been released from probation in Sacramento as a result of her statements and testimony against" Kennedy, materials evidencing these facts might have been relevant to impeach her trial testimony. However, once again Kennedy's request for materials goes far beyond the asserted justification. If Kennedy had specifically requested materials showing Doreen Westbrook had previously "snitched" in exchange for leniency and other benefits, and/or had been released from probation in Sacramento as a result of her statements and testimony against him, then perhaps he would have been able to show he would have been entitled to those materials at time of trial. But Kennedy made his request far broader than his justification, and as we have explained the trial court was not obliged to parse Kennedy's request and issue a discovery order for some subset of materials encompassed by the request.

In any event, even if Kennedy's discovery request had been appropriately narrowed, he has failed to show he would have been entitled to the requested

evidence under *Brady* because he has failed to address materiality of that evidence, and he has failed to show he would have been entitled to the evidence under section 1054.1(e).

Under these circumstances, Kennedy has not shown an abuse of discretion in the trial court's denial of his request.

14

*Jimmie Westbrook's Escape*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning Jimmie Westbrook's escape from custody and subsequent capture on/or about January 8, 1993, including information about persons suspected of aiding or·abetting the escape."

In their second response to the motion, the People agreed to "seek any possible impeachment evidence that might exist regarding [Doreen Westbrook's] involvement in the escape," but contended the request should be denied in all other respects.

The trial court granted this request, but limited it "to impeachment evidence regarding Doreen Westbrook's involvement in the escape."

Before this court, Kennedy asserts that he "accepts [the trial court's] limitation with the caveat that it should include 'impeachment evidence regarding Doreen Westbrook's involvement in <u>Jimmie Westbrook's</u> escape <u>from custody and subsequent capture</u>.' "

Kennedy has failed to show any abuse of discretion in the trial court's ruling. It is quite apparent the trial court granted Kennedy's request only to the limited extent the People had already agreed to provide discovery in response to it. As noted, the People agreed to "seek any possible impeachment evidence that might exist regarding [Doreen Westbrook's] involvement in the escape." The People did *not* agree to seek such evidence regarding her involvement in the subsequent capture, and Kennedy has made no attempt to show why he would have been entitled to such evidence at time of trial. Accordingly, Kennedy has not shown an abuse of discretion in the court's limited granting of this request.

### 15

*Communications Between Doreen Westbrook and Colusa
County Law Enforcement and/or District Attorney's Office
on March 15 and 16, 2003*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, of contacts or communications between Doreen Westbrook and the Colusa County Sheriff's Department and/or the Colusa County District Attorney's Office between March 15, 1993 4:30 AM and March 16, 1993 10:20 PM."

The trial court denied this request in its entirety.

Kennedy contends the trial court abused its discretion in denying this request because "this information could have been used to impeach the trial testimony of prosecution witnesses Westbrook, Markss, Bell and Shadinger" because "[i]f such contacts occurred, then they would clearly contradict the trial testimony of" those witnesses.

Even assuming materials regarding contacts or communications between Doreen Westbrook and the Colusa County Sheriff's Department and/or the Colusa County District Attorney's Office in the specified time period would have contradicted the testimony of the specified witnesses, we find no abuse of discretion in the trial court's denial of this request for two reasons. First, Kennedy fails to show how he would have been entitled to the requested evidence under *Brady* because he fails to address the *materiality* of any such evidence, that is, he fails to show a reasonable probability of a different result if such evidence had been disclosed to him at time of trial. Second, Kennedy fails to show he would have been entitled to the evidence under section 1054.1(e). Under these circumstances, Kennedy has again failed to show the trial court abused its discretion in denying his discovery request.

### 17

*Communications Between Doreen Westbrook and Colusa
County Law Enforcement and/or District Attorney's Office
Between March 16 and March 26, 1993*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, of contacts or communications, between Doreen Westbrook and the Colusa County Sheriff's Department and/or the Colusa County District Attorney's Office in Colusa County between March 16, 1993 10:21 PM and March 26, 1993 8:00 AM including but not limited to [¶]

a. any and all records, of any kind and in any form, concerning offers, agreements, promises, inducements or assurances regarding immunity, special treatment, witness protection, travel money, or new identity documents in a name other than her true name made by Sheriff Jerry Shadinger, Detective David Markss, District Attorney John Poyner, or any other law enforcement officer to induce, coerce or otherwise obtain statements and/or testimony by Doreen Westbrook at or before Mr. Kennedy's preliminary hearing; [¶] b. a list of all local, state and/or federal law enforcement officers and prosecutors who were present when Doreen Westbrook was interviewed [¶] i. on the evening of March 16, 1993 at the corner of Howe and El Camino in Sacramento, CA, [¶] ii. in the early morning of March 17, 1993 at a Sacramento CA police station, [¶] iii. on March 19, 1993 at the Colusa County Sheriff's Department, [¶] iv. On March 22, 1993 in Colusa County, [¶] v. on March 25, 1993 in Colusa County, [¶] vi. On any other date and time between March 16, 1993 10:21 PM and March 26, 1993 8:00 AM; [¶] c. any and all records, of any kind and in any form, of conversations between Mrs. Westbrook and Detective David Markss and/or District Attorney John Poyner between March 16, 1993 10:21 PM and March 26, 1993 8:00 AM; [¶] d. a list of the dates and times of any phone calls to Doreen Westbrook made by Detective David Markss, Investigator Steve McCulloch, District Attorney John Poyner and/or any other Colusa County law enforcement officer or prosecutor between March 16, 1993 10:21 PM and March 26, 1993 8:00 AM; [¶] e. any and all records, of any kind and in any form, concerning arrangement for and the results of a lie detector test administered to Doreen Westbrook on March 19, 1993 including but not limited to any information and instructions given to the person or persons conducting the test, and the tracings from the test."

In their second response to the motion, the People acknowledged they "had a statutory and constitutional duty to provide exculpatory information, which includes the items listed in the request," with the exception of the names of the people who were present when Doreen Westbrook was interviewed. They contended that "[a]bsent a showing to indicate that this responsibility was not fulfilled, and that this information was not contained in the defense file or the D.A.'s file, the presumption of Evidence Code section 664, and section 1054.5, applies and the section 1054.9 discovery request should be denied." (Boldface omitted.)

The trial court denied this request in its entirety.

Kennedy contends that "to the extent that Section 1054.[5] or Evidence Code [section] 664 was the basis for the denial of all or parts of this request, the denial was an abuse of discretion." With respect in particular to the names of the people who were present when Doreen Westbrook was interviewed,

Kennedy contends he was entitled to a list of those names "on the basis that it is likely to produce information that could be used to impeach Mrs. Westbrook and/or Detective Markss."

Addressing the latter point first, Kennedy once again has failed to show an abuse of discretion. To be discoverable under section 1054.9, the requested materials must be materials to which the defendant would have been entitled at time of trial. Kennedy offers no reason why he would have been entitled at time of trial to a list of the persons who were present when Doreen Westbrook was interviewed, except that—in his view—such a list would have been "likely to produce information that could be used to impeach" certain prosecution witnesses. The flaw in this argument is that even assuming Kennedy's view of the usefulness of such a list is correct, Kennedy identifies no legal basis on which a defendant is entitled, at time of trial, to materials that themselves would not be relevant for impeachment purposes, but which would be likely to *lead* to information that could be used for impeachment purposes. The duty of disclosure under *Brady* is limited to information that is favorable and material, and the duty of disclosure under section 1054.1(e) is limited to information that is exculpatory. A mere list of persons present when Doreen Westbrook was interviewed does not fall within either category. Accordingly, Kennedy has shown no abuse of discretion in the trial court's denial of his request for such a list.

As for the remainder of Kennedy's request, Kennedy appears to believe that his entitlement to the rest of the materials encompassed in his request depends on whether the reasons the People offered in opposition to the request in the trial court were valid. It does not. As the moving party in the trial court, Kennedy bore the burden of persuading the court he was entitled to the discovery he sought. Likewise, as the party seeking relief in this court, Kennedy bears the burden of persuading us the trial court abused its discretion in denying his discovery requests. To carry either burden, Kennedy must affirmatively show he is entitled to the requested materials under section 1054.9; it is not enough for him to simply show the People's arguments in opposition to his requests are invalid.

Accordingly, irrespective of the People's arguments based on section 1054.5 and Evidence Code section 664, Kennedy must still persuade us the materials he has requested are materials to which he would have been entitled at time of trial. With regard to materials concerning communications between Doreen Westbrook and Colusa County officials between March 16 and March 26, 1993, Kennedy has not done so. The trial court could have reasonably determined that Kennedy's request was overbroad. Had Kennedy limited his request to materials evidencing any "offers, agreements, promises, inducements or assurances regarding immunity, special treatment, witness protection, travel money, or new identity documents in a name other than her true

name made by Sheriff Jerry Shadinger, Detective David Markss, District Attorney John Poyner, or any other law enforcement officer to induce, coerce or otherwise obtain statements and/or testimony by Doreen Westbrook at or before Mr. Kennedy's preliminary hearing," then perhaps he would have been able to show he would have been entitled to those materials at time of trial (assuming he could otherwise demonstrate those materials fell within the prosecution's duty of disclosure under *Brady* or section 1054.1(e)). As we have repeatedly explained, however, the trial court was under no obligation to parse Kennedy's broad discovery request and issue a discovery order for some subset of materials encompassed in that request.

Under these circumstances, the trial court did not abuse its discretion in denying this discovery request.[12]

### 18

### *Communications Between Janet Lenore and Various Officials*

In his discovery motion under section 1054.9, Kennedy requested "[a]ny and all records, of any kind and in any form, of contacts and/or communications during the period from March 15, 1993 4:30 AM through March 26, 1993 8:00 AM between Mrs. Janet Lenore and any of the following: [¶] a. Detective/Officer Woods and/or any other officer of the Sacramento County Sheriff's Department; [¶] b. Detective David Markss and/or any other officer of the Colusa County Sheriff's Department; [¶] c. District Attorney John Poyner, Investigator Steve McCulloch and/or any other employee of the Colusa County District Attorney's Office."

In their second response to the motion, the People explained that Kennedy's counsel had "verbally represented that they have evidence indicating that Officer Woods called Detective Markss about talking to Janet Lenore." The People further explained that because Lenore was a witness at trial, Kennedy was entitled to any statement by Lenore under subdivision (f) of section 1054.1. Because "Kennedy did not receive disclosure of a report discussing" the alleged conversation between Officer Woods and Detective Markss about Lenore, the People "agreed to verify that all existing reports regarding statements of Janet Lenore have been disclosed" and asserted that "[a]ny discovery order should be so limited." (Boldface omitted.)

In his reply, Kennedy asserted Lenore was *not* a trial witness, but he nonetheless contended he was "entitled to discovery of this information

---

[12] The foregoing reasoning applies with equal force to Kennedy's discovery request No. 19, which sought materials concerning communications between Doreen Westbrook and Colusa County law enforcement officers and/or the district attorney's office on or after March 26, 1993. Accordingly, we need not address that request further.

because there is a reasonable basis to believe such information could provide evidence that would be exculpatory and/or favorable and material to his defense and also provide evidence that could have been used at trial to impeach Mrs. Westbrook and/or Detective Markss." (Boldface omitted.)

The trial court granted this request, but limited it "to existing reports regarding statements of Janet Lenore."

Kennedy contends the trial court's ruling was an abuse of discretion because he "is unable to discern any legal basis for th[e] limitation" and "[i]t merely rubber stamps the [People's] offer to 'verify that all existing reports regarding statements of Janet Lenore have been disclosed.' " He further contends he was entitled to the materials requested because "information concerning Mrs. Lenore['s] contacts with law enforcement officers during this crucial period in the investigation and her role in causing important material evidence—e.g., the victim's wallet—to be turned over to the Colusa County Sheriff's department could have provide[d] evidence that would have been exculpatory and/or favorable and material to [his] defense and could have been used to impeach Mrs. Westbrook and/or Detective Markss."

We find no abuse of discretion because: (1) Kennedy's request is over-broad; (2) Kennedy fails to explain how evidence of communications between Janet Lenore and various officials could have been used to impeach the trial testimony of Doreen Westbrook and/or Detective Markss; and (3) Kennedy fails to explain how such evidence could have been used to show that someone else was responsible for the murder of Chambers. Indeed, Kennedy does not explain who Janet Lenore is except to suggest she had a "role" in turning over Chambers's wallet to the Colusa County Sheriff's Department. In the absence of a further, detailed explanation of her role in the case, Kennedy has failed to show he would have been entitled to the requested materials at time of trial under any theory.

21

*List of Communications Between Doreen Westbrook and
Various Officials After October 28, 1993*

In his discovery motion, Kennedy requested "[a] list of the dates, times and places of all contacts and communications between Detective David Markss, District Attorney John Poyner and/or any other Colusa County official, and Mrs. Westbrook (aka Doreen Frances Warrington, Alexis Lee Andies, Nichole Cheryl Ball, Nichole Cheryl Grammar) after October 28, 1993."

In their second response to the motion, the People contended the request should be denied because it "refers to a period after the guilt phase, and Kennedy would not have been entitled to this information at the time of trial."

The trial court denied this request in its entirety.

Kennedy "acknowledges that this information is not discoverable under Section 1054.9," but "he [still] believes he is entitled to this information under *Brady* because there is a reasonable basis to believe such information could provide evidence of a violation of the prosecution's obligation to disclose the terms of all deals made with Mrs. Westbrook."

Kennedy has shown no abuse of discretion. As we have explained, Kennedy has failed to offer any authority supporting his suggestion that he has a right under *Brady*, independent of section 1054.9, to obtain a court order for discovery to assist him in prosecuting his habeas corpus petition. Thus, Kennedy's concession that he is not entitled to the requested materials under section 1054.9 disposes of this request. In any event, as we have also explained, *Brady* requires the prosecution to disclose only information that is favorable and material. Kennedy has not shown that a mere list of communications between Doreen Westbrook and various officials during a certain time period would be either.

22

*Doreen Westbrook's Psychological Condition*

In his discovery motion, Kennedy requested "[a]ny information concerning psychological or psychiatric conditions relevant to Doreen Westbrook's credibility as a witness or truthfulness."

The trial court denied this request in its entirety.

Kennedy contends that "to the extent that Section 1054.[5] or Evidence Code [section] 664 was the basis for the denial of all or parts of this request, the denial was an abuse of discretion."

Kennedy has failed to show an abuse of discretion in the trial court's ruling for several reasons. First, it is Kennedy's burden to affirmatively show he is entitled to the materials he has requested under section 1054.9; it is not enough for him to simply show that the People's arguments in opposition to his requests based on section 1054.5 and Evidence Code section 664 are invalid. Thus, Kennedy must explain why he would have been entitled to

materials concerning psychological or psychiatric conditions and how they would be relevant to Doreen Westbrook's credibility as a witness or truthfulness at time of trial, whether under *Brady*, section 1054.1(e), or some other theory. He has failed to do so.

Second, even as to evidence that might have been useful to impeach Doreen Westbrook's trial testimony, Kennedy has failed to show he would have been entitled to that evidence under *Brady* because he has failed to address the *materiality* of any such evidence, and he has failed to show he would have been entitled to the evidence under section 1054.1(e).

Under these circumstances, Kennedy has not shown an abuse of discretion in the trial court's denial of this request.[13]

25

*List of Communications Between the Colusa County Sheriff's Department and Various Individuals*

In his discovery motion, Kennedy requested "[a] list of the dates, times and places of any and all contacts or communications after March 15, 1993 4:30 AM between David Markss, Mark Troughton or any other employee of the Colusa County Sheriff's Department and the following individuals: [¶] a. Janet Lenore, [¶] b. Steven Lenore (Duclos), [¶] c. William Lenore (Duclos), [¶] d. Robert Lenore (Duclos), [¶] e. Rochelle Hendricks, [¶] f. Ronald Woods, [¶] g. Kimberley Crawford, [¶] h. John 'Hoss' Hancock, [¶] i. James Ross, [¶] j. Joyce Ross, [¶] k. George Westbrook, [¶] l. Gary Pennington, [¶] m. Yvonne Leavitt."

The trial court denied this request in its entirety.

Kennedy first contends that as to Robert Lenore, Rochelle Hendricks, Ron Woods, Kimberley Crawford, John Hancock, and Joyce and James Ross—all of whom were prosecution witnesses—the trial court's denial of his request was an abuse of discretion because "this information could have been used to impeach their trial testimony by showing a pattern of undisclosed communications and deals that may have materially affected their testimony at trial."

---

[13] The foregoing reasoning applies with equal force to Kennedy's discovery requests Nos. 23 and 24, which sought, respectively: (1) information concerning instances in which Doreen Westbrook was suspected of having lied to law enforcement officers and/or prosecutors; and (2) materials concerning instances in which Doreen Westbrook committed perjury, falsified her identity, or committed any other act or crime involving dishonesty. Accordingly, we need not address those requests further.

We find no abuse of discretion as to these witnesses. Kennedy fails to adequately explain how a mere list of communications between the Colusa County Sheriff's Department and these prosecution witnesses—even if previously undisclosed—could have been used to impeach their trial testimony. Although any undisclosed "deals" might have been useful for impeachment purposes, Kennedy did not request evidence of any such deals; he requested simply a list of communications.

With respect to Janet Lenore, Kennedy contends the trial court's ruling was an abuse of discretion for the same reasons he offered in connection with request No. 18—because a list of communications with Lenore "could have provide[d] evidence that would have been exculpatory and/or favorable and material to [his] defense and could have been used to impeach Mrs. Westbrook and/or Detective Markss."

We find no abuse of discretion because Kennedy fails to explain how a mere list of communications between the Colusa County Sheriff's Department and Lenore could have been used to impeach the trial testimony of Doreen Westbrook and/or Detective Markss or could have otherwise constituted exculpatory or favorable evidence subject to disclosure under *Brady* and/or section 1054.1(e).

As to George Westbrook, Kennedy contends he has reason to believe "undisclosed contacts and communications between Mr. Westbrook and Colusa County investigators occurred" and "discovery of those contacts and communications could have provided information, at trial, that was exculpatory and/or favorable and material to [his] defense, including evidence of third party culpability and/or evidence that could have been used to impeach Mrs. Westbrook and/or Detective Markss."

We find no abuse of discretion because Kennedy fails to explain how a mere list of communications between the Colusa County Sheriff's Department and George Westbrook could have been used to impeach the trial testimony of Doreen Westbrook and/or Detective Markss or could have shown someone else murdered Chambers, and thus he has failed to show how he was entitled to that list at time of trial under *Brady* and/or section 1054.1(e).

Finally, with regard to Gary Pennington, Kennedy contends that shortly after Pennington told investigators he gave Doreen Westbrook a gun that could have been the murder weapon, one of the prosecutors wrote to the district attorney and instructed him to investigate Pennington. Pennington subsequently failed to testify at trial. According to Kennedy, under these circumstances, the trial court's denial of his request for a list of communications with Pennington was an abuse of discretion because "discovery of

contacts between Detective Markss and Mr. Pennington could have provided information, at trial, that was exculpatory and/or favorable and material to [his] defense, including evidence of third party culpability and/or evidence that could have been used to impeach Mrs. Westbrook and/or Detective Markss."

Once again, we find no abuse of discretion because Kennedy fails to explain how a mere list of communications between the Colusa County Sheriff's Department and Pennington could have been used to impeach the trial testimony of Doreen Westbrook and/or Detective Markss or could have shown someone else murdered Chambers, and thus he has failed to show how he was entitled to that list at time of trial under *Brady* and/or section 1054.1(e).

### 26

### *List of Communications Between Detective Matranga and Various Individuals*

In his discovery motion, Kennedy requested "[a] list of the dates, times and places of any and all contacts or communications after March 15, 1993 4:30 AM between Detective Richard Matranga of the Sacramento County Sheriff's Department and the following individuals: [¶] a. Rochelle Hendricks, [¶] b. Ronald Woods, [¶] c. Kimberley Crawford, [¶] d. John 'Hoss' Hancock, [¶] e. James Ross, [¶] f. Joyce Ross, [¶] g. George Westbrook, [¶] h. Gary Pennington, [¶] i. Yvonne Leavitt."

In their second response to the motion, the People asserted the request should be denied as to those individuals who were not witnesses at trial and did not provide exculpatory information because Kennedy had not shown he would have been entitled to the requested information at time of trial. As to those individuals who were witnesses at trial, the People believed that any statements or reports and any exculpatory evidence had already been provided, but they "informally agreed to contact Detective Matranga to verify that all exculpatory materials have been provided." (Boldface omitted.)

The trial court granted this request, but limited it to "any exculpatory information or impeachment evidence of the nine individuals for the time period of March 15, 1993, through the end of trial." Thus, the trial court granted Kennedy's request only to the limited extent the People had already agreed to provide discovery in response to it.

In his petition, Kennedy notes the trial court's limited granting of this request, then states that he "interprets this modification to mean that he is

entitled to discovery of all of the information requested that relates to contacts and communications occurring before December 20, 1993." That is his entire "argument" related to this request.

Because Kennedy has failed to assert, let alone show, an abuse of discretion in the trial court's ruling on this request, we have no occasion to address this request any further.

### 27

### *Arrests of Prosecution Witnesses*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning the arrest and/or detention of individuals who testified for the prosecution in Mr. Kennedy's trial. This request covers arrests and/or detentions during the period from March 16, 1993 to December 20, 1993. It includes any and all information concerning the circumstances of the arrest, the officers involved in the arrest, the charges filed, and the disposition thereof. This request includes, but is not limited to, records concerning the following: [¶] a. the arrest of Kim Crawford on or about March 19[,] 1993; [¶] b. the arrest of Ron Woods on or about March 19, 1993; [¶] c. the arrest of Rochelle Hendricks on or about April 5, 1993; [¶] d. the arrests of James Ross on or about March 30, 1993, June 23, 1993 and June 29, 1993; [¶] e. the arrests of John 'Hoss' Hancock on or about April 27, 1993 and November 9, 1993; [¶] f. the arrest of any of the above, or any other prosecution witness, on any other date between March 15, 1993 and December 20, 1993."

The trial court denied this request in its entirety.

Kennedy contends the trial court abused its discretion in denying this request because "information concerning these arrests could have been used, at trial, to impeach the testimony of all the individuals named in this request." Kennedy asserts, on information and belief, that "Crawford, Woods and Hendricks may have received favorable treatment in exchange for their cooperation with the Colusa County prosecution team" and that "Ross and Hancock may have been arrested as part of a prosecution effort to coerce them into testifying against" him.

We find no abuse of discretion. Whether premised on *Brady* or section 1054.1(e), Kennedy's discovery request relies on the proposition that records concerning the arrests of the named individuals could have been used to impeach them. However, that is not necessarily true. While evidence of charges pending against a prosecution witness at the time of trial is relevant

for impeachment purposes, here Kennedy has not suggested whether the arrests he describes resulted in charges, let alone whether those charges were still pending at time of his trial for murdering Chambers. Thus, Kennedy has failed to show that the materials he requested would have been useful for impeachment purposes.

To the extent some of the witnesses may have received favorable treatment for their testimony or may have been coerced into testifying, if Kennedy had limited his request to materials evidencing those facts, then perhaps he would have been able to show he would have been entitled to those materials at time of trial (assuming he could otherwise demonstrate those materials fell within the prosecution's duty of disclosure under *Brady* or section 1054.1(e)). But Kennedy made his request far broader than his justification, and as we have explained, the trial court was not obliged to parse Kennedy's request and issue a discovery order for some subset of materials encompassed by the request.

In any event, even if Kennedy's discovery request had been appropriately narrowed, Kennedy has failed to show he would have been entitled to the requested evidence under *Brady* because he has failed to address the *materiality* of any such evidence, and he has failed to show he would have been entitled to the evidence under section 1054.1(e). Under these circumstances, Kennedy has again failed to show the trial court abused its discretion in denying his discovery request.

28

*Arrests of Potential Defense Witnesses*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning the arrest and/or detention of potential defense witnesses. This request covers arrests and/or detentions during the period from March 16, 1993 to December 20, 1993. It includes any and all information concerning the circumstances of the arrest, the officers involved in the arrest, the charges filed, and the disposition thereof. This request includes, but is not limited to, records concerning [¶] a. the arrests of George Westbrook in April 1993, and any other times between March 15, 1993 and December 20, 1993; [¶] b. the arrest of Janet Cissney on or about August 31, 1993 and any other times between March 15, 1993 and December 20, 1993; [¶] c. the arrests of Dina McKee, Debra Matthews, Yvonne Leavitt, Robert Nyga and/or Gary Pennington between March 15, 1993 and December 20, 1993."

In their second response to the motion, the People agreed to provide information in the prosecution's files regarding felony convictions and convictions involving crimes of moral turpitude, but contended the request should otherwise be denied because the requested information was not discoverable under section 1054.9.

The trial court purported to grant this request, but limited it "to evidence of felony convictions and convictions of moral turpitude of defense witnesses." However, since Kennedy did not actually ask for materials regarding *convictions* of potential defense witnesses, only materials regarding their *arrests*, the trial court's ruling was, in effect, a denial of Kennedy's request.

Kennedy contends the trial court abused its discretion in denying his request for information about the arrests of potential defense witnesses because "discovery of the circumstances leading to the arrests and the officers involved could have been used, at trial, to impeach the testimony of Detectives Matranga and Markss and support a defense based on the theory that prosecutorial harassment of potential defense witnesses systematically prevented [him] from preparing and presenting an effective defense."

We find no abuse of discretion because, once again, Kennedy has failed to show he would have been entitled to the requested materials at time of trial, either under *Brady* or under section 1054.1(e). Kennedy fails to explain how the fact and/or circumstances of the arrests of potential defense witnesses could have been used to impeach Detective Matranga or Detective Markss. As for his theory of prosecutorial harassment, at this point it is nothing more than that—a theory. Section 1054.9 does not allow the defendant to engage in fishing expeditions in an attempt to find evidence to support possible defense theories that were not, but might have been, advanced at time of trial. As relevant here, section 1054.9 permits the discovery of materials to which the defendant would have been entitled at time of trial because those materials either were favorable and material under *Brady* or exculpatory under section 1054.1(e). Kennedy has failed to show that the broad array of information he is seeking regarding the arrests of potential defense witnesses qualifies as either. Accordingly, he has failed to show an abuse of discretion in the trial court's ruling.[14]

---

[14] The foregoing reasoning applies with equal force to Kennedy's discovery request No. 32, which sought materials concerning Detective Matranga's participation in the arrests and/or searches of defendant and various other individuals. Accordingly, we need not address that request further.

29

*Communications Concerning the Investigation and Trial*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, of communications between the Colusa County Sheriff's Department and the Sacramento County Sheriff's Department, the California Department of Corrections and any other federal, state or local law enforcement agency concerning the investigation and trial of Jerry Noble Kennedy including but not limited to [¶] a. the dates, times and subject of any and all contacts and communications between the Colusa County Sheriff's Department and the Federal Bureau of Investigation, the Drug Enforcement Agency and/or any other federal agency concerning the arrest and prosecution of Jerry Noble Kennedy; [¶] b. the dates, times and subject of any and all contacts and communications between the Colusa County Sheriff's Department and the California State Department of Justice or any other state law enforcement agency concerning the arrest and prosecution of Jerry Noble Kennedy; [¶] c. the dates, times and subject of any and all contacts and communications between the Colusa County Sheriff's Department and the Federal Bureau of Investigation, the Drug Enforcement Agency or any other federal agency concerning Doreen Westbrook (aka Doreen Duclos, Doreen Lenore, Doreen Warrington, Alexis Lee Andies, Nichole Cheryl Ball, Nichole Cheryl Grammar); [¶] d. the dates, times and subject of any and all contacts and communications between the Colusa County Sheriff's Department and the California State Department of Justice or any other state law enforcement agency concerning Doreen Westbrook (aka Doreen Duclos, Doreen Lenore, Doreen Warrington, Alexis Lee Andies, Nichole Cheryl Ball, Nichole Cheryl Grammar)."

The trial court denied this request in its entirety.

Kennedy contends that "[i]n so far as this request was limited to information in the files of state agencies, denial of this request was an abuse of discretion because . . . discovery of information concerning contacts and communications between Colusa County law enforcement agencies and other state agencies involved in the investigation and prosecution of this case could have been used, at trial, to impeach prosecution witnesses."

We find no abuse of discretion because: (1) Kennedy's request is overbroad; and (2) Kennedy fails to explain how evidence of the specified communications could have been used to impeach the trial testimony of any particular prosecution witness.

### 34

*Detective Matranga's Files*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, in any file maintained by Sacramento County Detective Richard Matranga concerning the following: [¶] a. Jerry Kennedy, [¶] b. Doreen Westbrook (aka Doreen Duclos and Doreen Warrington), [¶] c. Hank Kennedy, [¶] d. Buford Kennedy, [¶] e. George Westbrook, [¶] f. Jimmie Westbrook, [¶] g. John Hancock, [¶] h. Ron Woods, [¶] i. Kim Crawford, [¶] j. Rochelle Hendricks, [¶] k. Gary Pennington, [¶] l. Yvonne Leavitt, [¶] m. Letricia Gardner, [¶] n. Max Layton, [¶] o. the Sacramaniacs."

In their second response, the People noted they had "informally agreed to determine whether Detective Matranga's files contain[ed] any . . . undisclosed [substantive exculpatory or impeachment] information," but asserted that Kennedy was "not entitled to any other information unless he can ma[k]e a showing . . . that he would have been entitled to the information at the time of trial if the information was requested."

The trial court granted this request but limited it to "information that is substantive exculpatory information or impeachment." Thus, the trial court granted the request to the limited extent the People had already agreed to provide information in response to it.

In his petition, Kennedy notes the trial court's limited granting of this request, then states that he "understands this modification to mean that he is entitled . . . to discovery of all the information in the files maintained by Detective Matranga that could have been used to impeach the trial testimony of Detective Matranga, or would have been discoverable if [Kennedy] had requested it at trial based on any of the theories articulated above as bases for [certain] requests." That is his entire "argument" related to this request.

Because Kennedy has failed to assert, let alone show, an abuse of discretion in the trial court's ruling on this request, we have no occasion to address this request any further.

### 36

*Communications Between Janet Madsen and/or Jack*
*Blaylock and Colusa County Officials*

In his discovery motion, Kennedy requested "[t]he dates and times of all contacts and communications, [of] any kind and in any form, between Janet

Madsen and/or Jack Blaylock and the Colusa County Sheriff's Department and/or the District Attorney concerning the investigation and trial of Jerry Noble Kennedy."

The trial court denied this request in its entirety.

Kennedy contends the denial of this request was an abuse of discretion because "discovery of this information could have been used to impeach the testimony of Markss, Troughton and Madsen at the October 7, 1993 suppression hearing and trial."

We find no abuse of discretion because Kennedy fails to show how the materials requested—which are limited to the dates and times of certain communications—could have been used to impeach the trial testimony of *any* prosecution witness, let alone the three particular witnesses he mentions. Thus, Kennedy has failed to show he would have been entitled to the requested materials at time of trial under either *Brady* or section 1054.1(e).

## 41

### *Security Arrangements*

In his discovery motion, Kennedy requested "[a]ny and all records concerning security arrangements, including arrangements for helicopters, snipers, SWAT teams, etc. for Mr. Kennedy's preliminary hearing and trial."

The trial court denied this request in its entirety.

Kennedy contends the trial court abused its discretion in denying his request because he was entitled to the requested materials under *Brady*. He is wrong. *Brady* requires the prosecution to disclose information that is favorable and material on the issue of guilt or punishment. Kennedy has not shown that records concerning security arrangements for his preliminary hearing and trial would be favorable to him, let alone material on the issue of guilt or punishment. A motion for change of venue is a purely procedural matter that simply does not fall within the purview of *Brady*.

## 50

### *Acts of Moral Turpitude*

In his discovery motion, Kennedy requested "[a]ny and all records, of any kind and in any form, concerning any acts constituting moral turpitude by any

of the following: [¶] a. Doreen Westbrook (aka Doreen Duclos and Doreen Francis Warrington), [¶] b. Ron Woods, [¶] c. Detective David Markss, [¶] d. Detective Mark Troughton, [¶] e. Robert Lenore (Duclos), [¶] f. Rochelle Hendricks, [¶] g. Deputy James Bell, [¶] h. Detective Richard Matranga, [¶] i. Special Agent Al Benitez, [¶] j. Janet Madsen."

The trial court denied this request in its entirety.

Kennedy contends that "to the extent that this request was denied based on Section 1054.5 or Evidence Code [section] 664, the denial was an abuse of discretion."

As we explained above with respect to request No. 17, it is Kennedy's burden to affirmatively show he is entitled to the materials he has requested under section 1054.9; it is not enough for him to simply show that the People's arguments in opposition to his requests based on section 1054.5 and Evidence Code section 664 are invalid. Unfortunately for him, he has not carried this burden. Assuming Kennedy sought the requested materials as potential impeachment evidence, Kennedy has failed to show he would have been entitled to the requested materials at time of trial under *Brady* because he has failed to address the *materiality* of any such evidence. Further, he has failed to show he would have been entitled to the requested materials at time of trial under section 1054.1(e). Under the circumstances, the trial court did not abuse its discretion in denying this request.[15]

## 56 and 58

### *Catchall Requests*

In his discovery motion, Kennedy requested "[a]ny and all other records, of any kind and in any form, not covered by the requests above that would tend to exonerate or exculpate [Kennedy] as to guilt or punishment, diminish or reduce any personal culpability for the charged offenses, or constitute information that the defense might use to impeach or contradict prosecution witnesses, including but not limited to [¶] a. evidence that tends to negate any element of the crimes [of] which Mr. Kennedy was convicted; [¶] b. evidence that any party other than Mr. Kennedy was culpable of the robbery and murder of Glenn Chambers; [¶] c. evidence that could have been used to undermine the credibility of a prosecution witness, including evidence of past

---

[15] The foregoing reasoning applies with equal force to Kennedy's discovery requests Nos. 53 and 54, which sought, respectively: (1) materials concerning the use of Chambers's credit cards on or after March 15, 1993; and (2) materials concerning communications between Sacramento County law enforcement agencies and Colusa County officials related to various subjects. Accordingly, we need not address those requests further.

inaccurate statements, prior inconsistent statements, non-felony conduct involving moral turpitude, misdemeanor convictions involving moral turpitude that could have assisted the defendant in obtaining direct evidence of the misdemeanor misconduct, criminal charges pending against a witness anywhere in the state, the probationary status of witnesses, any other evidence reflecting on the credibility of material witnesses, including reduced sentences, avoiding prosecution of criminal charges, previous informant status, benefits received for cooperation with law enforcement in prior cases; [¶] d. evidence that would have supported the defense motion to suppress the testimony of Janet Madsen."

Kennedy also requested "[a]ny other relevant discovery materials covered under the statute of which petitioner is not yet aware, whether due to the State's concealment or its oversight."

The trial court denied these requests in their entirety.

Kennedy contends that "to the extent that th[ese] requests w[ere] denied based on Section 1054.5 or Evidence Code [section] 664, the denial was an abuse of discretion."

We find no abuse of discretion. In *Steele*, the Supreme Court interpreted section 1054.9 "to require the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of *specific materials* . . . ." (*In re Steele, supra*, 32 Cal.4th at p. 697, italics added.) The court approved of the request at issue there because it was "not just a free-floating request for anything the prosecution has that may be relevant to the case, but a focused request for specific information." (*Id.* at p. 702.)

The two requests at issue here are exactly the sort of "free-floating" requests the *Steele* court disapproved. In effect, they ask for anything to which Kennedy is entitled under section 1054.9 that is not encompassed in his previous requests. Because they are not focused requests for specific information, the trial court did not abuse its discretion in denying them.

V

*Conclusion*

In summary, Kennedy has failed to show the trial court abused its discretion in denying *any* of his discovery requests.

## DISPOSITION

The petition for a peremptory writ of mandate is denied. Having served its purpose, the alternative writ is discharged.

Scotland, P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 2, 2007, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied March 21, 2007, S149341.