166 Cal.App.4th 133 (2008)
STEVEN DAVID CATLIN, Petitioner,
v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.
No. F053705.
Court of Appeals of California, Fifth District.
August 22, 2008.
As modified September 8, 2008.
*136 J. Wilder Lee, under appointment by the Supreme Court, for Petitioner.
No appearance for Respondent.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, George Hendrickson and Stephen G. Herndon, Deputy Attorneys General, for Real Party in Interest.

OPINION
CORNELL, Acting P. J.
Steven David Catlin is awaiting execution for the 1984 murder of his mother, Martha Catlin, and is serving life sentences for the murders of two of his ex-wives, Joyce and Glenna Catlin.[1] He has filed a petition for a writ of mandate seeking an order directing the trial court to grant his motion for postconviction discovery pursuant to the provisions of Penal Code section 1054.9.[2] The trial court denied Catlin's section 1054.9 motion, finding it was not filed within a reasonable time period.
Catlin argues the trial court erred because the statute does not require a section 1054.9 motion be filed within a "reasonable" time period. We agree *137 with Catlin that section 1054.9 does not impose any such requirement, but conclude that In re Steele (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444] (Steele) requires a motion filed pursuant to the statute be filed within a reasonable time period. Accordingly, we will deny Catlin's petition.

PROCEDURAL SUMMARY
Catlin was convicted of the three crimes in two separate trials. He was convicted of murdering Glenna in Monterey County Superior Court in 1986. He was sentenced to life in prison without the possibility of parole. The judgment was affirmed on appeal in an unpublished opinion. (People v. Catlin (June 13, 1988, H002078) [nonpub. opn.].) Catlin was convicted of murdering Joyce and Martha in 1990 in Kern County Superior Court. He was sentenced to life in prison for the murder of Joyce[3] and sentenced to death for the murder of Martha. The judgment was affirmed on direct appeal. (People v. Catlin (2001) 26 Cal.4th 81 [109 Cal.Rptr.2d 31, 26 P.3d 357].) Catlin is confined at San Quentin State Prison pending execution of the death sentence.
On August 9, 2000, Catlin filed a petition for writ of habeas corpus in the Supreme Court. On September 25, 2007, the Supreme Court denied Catlin's petition for writ of habeas corpus.
On August 3, 2007, seven years after filing his petition for writ of habeas corpus, but before the petition was denied, Catlin filed a motion for postconviction discovery pursuant to section 1054.9. Section 1054.9 permits a defendant who has been sentenced to death, or to life in prison without the possibility of parole, to obtain discovery "[u]pon the prosecution of a postconviction writ of habeas corpus." (Id., subd. (a).) The trial court denied the motion.
On September 14, 2007, Catlin filed a petition for writ of mandate in this court seeking an order directing the trial court to grant his motion. On October 5, 2007, we denied Catlin's petition for writ of mandate, after his petition for writ of habeas corpus had been denied by the Supreme Court. On October 16, 2007, Catlin filed a petition in the Supreme Court seeking review of our order. On November 28, 2007, Catlin's petition for review was granted, and the matter was transferred to this court with directions to vacate our order denying his petition for writ of mandate and to issue an alternative writ directing Kern County Superior Court to grant the motion or show cause why it should not be granted. We did so.

*138 DISCUSSION

I. A Section 1054.9 Motion Must Be Filed Within a Reasonable Time Period

(1) As stated ante, section 1054.9 permits a defendant sentenced to death or life in prison without the possibility of parole to obtain postconviction discovery if he or she is prosecuting a postconviction petition for writ of habeas corpus. The permitted discovery is limited to material in the possession of the prosecution or law enforcement to which he or she would have been entitled at the time of trial. Discovery is permitted only if the defendant seeking discovery shows "that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful...." (Id., subd. (a).)[4]
The parties agree that Steele, supra, 32 Cal.4th 682 must guide us in the resolution of this case. Steele is the only Supreme Court opinion to address section 1054.9. The Supreme Court issued an order to show cause in Steele "to resolve important procedural and substantive issues regarding" section 1054.9. (Steele, at p. 688.)
(2) The Supreme Court began its analysis by addressing procedural issues related to section 1054.9. The court noted that section 1054.9 "says little about the procedure a defendant should follow in seeking the discovery materials, such as the time and place for making the motion." (Steele, supra, 32 Cal.4th at pp. 690-691.) It began by deciding that the phrase "`[u]pon the prosecution of a postconviction writ of habeas corpus'" means that a *139 defendant is entitled "to seek discovery if he or she is preparing to file the petition as well as after the petition has been filed." (Id. at p. 691.) It concluded that a motion pursuant to section 1054.9 should, except in unusual circumstances, be filed in the court where the matter was tried, but that either party could challenge the trial court's ruling by filing a petition for writ of mandate in the Court of Appeal. (Steele, at pp. 691-692.)
In the portion of the opinion addressing the substantive issues related to section 1054.9, the Supreme Court recognized the statute provides for only limited discovery. (Steele, supra, 32 Cal.4th at p. 695.) The Supreme Court interpreted "section 1054.9 to require the trial court ... to order discovery of specific materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (Id. at p. 697.)
(3) The trial court here, when ruling on Catlin's motion for discovery, did not address the substantive issues raised by the motion. Instead, it concluded that Catlin's motion, filed 17 years after he had been convicted, and seven years after he had filed his petition for writ of habeas corpus with the Supreme Court, was not filed within a reasonable time. The basis for the trial court's ruling can be found in the second footnote in Steele, which reads: "Section 1054.9 provides no time limits for making the discovery motion or complying with any discovery order. We believe the statute implies that the motion, any petition challenging the trial court's ruling, and compliance with a discovery order must all be done within a reasonable time period. We will consider any unreasonable delay in seeking discovery under this section in determining whether the underlying habeas corpus petition is timely. [Citations.] We would consider a petition for writ of mandate challenging the trial court's order filed within 20 days after that order to be filed within a reasonable time for these purposes. Moreover, as we are directing in this case, any discovery ordered pursuant to section 1054.9 should be provided within a reasonable time, which might vary depending on the nature of the order. We will also consider the date of compliance with the order in considering the timeliness of any petition for writ of habeas corpus that might be filed in light of the discovery." (Steele, supra, 32 Cal.4th at pp. 692-693, fn. 2.)
*140 Catlin contends that this footnote is obiter dictum, and thus is not binding precedent. He urges us to follow the language of the statute, which requires only that a section 1054.9 motion be filed during the prosecution of a postconviction writ of habeas corpus, which Steele defined to include the time during which the defendant is preparing to file the writ as well as during the time the writ is pending. (Steele, supra, 32 Cal.4th at p. 691.)
(4) While Steele, supra, 32 Cal.4th at pages 692-693, footnote 2 may not have been related directly to the issue before the Supreme Court, we choose not to ignore it. The Supreme Court made it clear in Steele that it was considering procedural and substantive issues regarding a new statute. "When the Supreme Court has conducted a thorough analysis of the issues and such analysis reflects compelling logic, its dictum should be followed." (Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].) The time within which a defendant must make a section 1054.9 motion is a procedural issue and was considered by the Supreme Court. Whether footnote 2 is binding on this court may be arguable, but it is clear evidence of the Supreme Court's interpretation of the time requirements for bringing a section 1054.9 motion. Since the Supreme Court was conducting a thorough review of the procedural and substantive issues presented by section 1054.9, we conclude we should follow footnote 2 and hold that a section 1054.9 motion must be brought within a reasonable time period.[5]
Catlin makes two additional arguments to support his contention that the trial court erred in denying his motion. First, he argues that the third sentence of Steele, supra, 32 Cal.4th at page 692, footnote 2 requires that the timeliness of a section 1054.9 motion should be determined only when the Supreme Court is ruling on the defendant's petition for a writ of habeas corpus. After stating that a section 1054.9 motion must be filed within a reasonable time period, footnote 2 states, "We will consider any unreasonable delay in seeking discovery under this section in determining whether the underlying habeas corpus petition is timely." (Steele, supra, 32 Cal.4th at p. 692, fn. 2.) Catlin interprets this sentence to mean that the motion must be granted by the trial court, and any issue related to whether the motion was filed within a reasonable time period can be litigated only in the Supreme Court when addressing the timeliness of the habeas corpus petition.
This interpretation would result in mischief.
(5) When reading the third sentence of Steele, supra, 32 Cal.4th at page 692, footnote 2 in context, it is clear that the Supreme Court was not *141 suggesting the timeliness of a section 1054.9 motion could be challenged only by arguing the underlying habeas corpus petition was untimely. Otherwise, a defendant could file numerous section 1054.9 motions over a period of years and the trial court would be without power to deny the motions on the grounds that he or she had waited too long. Instead, we conclude this sentence explains that the timeliness of the motion is one factor the Supreme Court will consider when deciding if the underlying habeas corpus petition is timely; it does not limit the trial court's ability to decide if the section 1054.9 motion was filed within a reasonable time. It cannot be interpreted as suggested by Catlin.
Catlin's second argument is that a motion is timely if the information obtained may be useful to the petitioner. Stated differently, Catlin argues a section 1054.9 motion is timely at any time before the petitioner is executed, since another petition for writ of habeas corpus may be filed at any time before execution and information discovered as a result of the motion may be useful to the petitioner.
Again, the obvious potential for mischief this interpretation would create demands the suggestion be rejected. If the only time limit on the filing of a section 1054.9 motion is that it must be filed before the defendant is executed, then the reasonable time requirement becomes meaningless. Any delay becomes reasonable since the materials obtained, if they exist, may assist the petitioner in avoiding execution.
(6) We agree with Catlin to a certain extent because a section 1054.9 motion may be filed at any time before execution as long as a petition for writ of habeas corpus is being contemplated or is pending. Where we disagree with Catlin, however, is that any lengthy delay must be explained in a manner that will permit the trial court to conclude the delay was reasonable. Although practitioners undoubtedly would welcome a bright-line definition of a reasonable delay, we cannot provide one other than to suggest that if the practitioner is concerned about the delay, the trial court also will be concerned.
Similarly, we cannot list the facts or circumstances that would require a court to conclude that a delay was reasonable. We can envision circumstances that would lead to the conclusion that a long delay in making a motion was reasonable. New techniques for evaluating evidence will be developed in the future. Discovery may be necessary to permit the petitioner to analyze the evidence from his case using these new techniques. Witnesses may come forward after a lengthy delay who may cast suspicion on the prosecution's evidence or witnesses. What the circumstances will be are impossible to predict. What we can state with certainty, however, is that if there is a lengthy *142 delay in making a section 1054.9 motion, the circumstances justifying the delay must be included in the motion, along with an explanation that will permit the trial court to conclude the delay was reasonable.

II. The Trial Court Did Not Abuse Its Discretion

Having concluded that a section 1054.9 motion must be filed within a reasonable time period, we turn to the question of whether the trial court abused its discretion in concluding the motion in this case was not timely. (Kennedy v. Superior Court (2006) 145 Cal.App.4th 359, 366 [51 Cal.Rptr.3d 637].) We conclude that it did not.
As stated above, Catlin was convicted and sentenced for the murders of Joyce and Martha in 1990. His opening brief on his direct appeal was filed in 1998, and the Supreme Court affirmed his conviction in 2001. Catlin filed his petition for writ of habeas corpus on August 9, 2000. Catlin waited another seven years to file his section 1054.9 discovery motion on August 3, 2007. Seventeen years passed between Catlin's conviction and his section 1054.9 motion.
Catlin's only attempt to explain this substantial delay was that his current writ attorney was appointed on May 5, 2006, and counsel was required to conduct an investigation and raise all potentially meritorious claims for relief. Counsel believed that the prosecution and law enforcement agencies had evidence in their possession that would assist in presenting a supplemental writ petition. In addition, counsel pointed out that section 1054.9 did not become effective until January 1, 2003. Therefore, he could not have filed the motion before that date.
Catlin's section 1054.9 motion requested access to the district attorney's entire file. The reason for this request was that Catlin's current counsel could not determine what Catlin's trial counsel had received from the district attorney. Counsel had attempted to determine what information had been provided in discovery, but trial counsel did not number the discovery received from the district attorney or create an index or catalog of the discovery. Despite current counsel's best attempts, he could not determine the extent of discovery provided to trial counsel. Therefore, current counsel sought access to the district attorney's entire file to make sure that everything to which Catlin had been entitled was provided by the prosecution.
The breadth of counsel's discovery request is important only to point out the lack of any explanation for the delay in filing the section 1054.9 motion. There is no suggestion that information was missing from Catlin's trial counsel's files, only that current counsel was unsure whether he had everything provided to trial counsel. There was no suggestion that new information *143 was developed suggesting that trial counsel had not been provided with discovery to which Catlin was entitled. There was no suggestion that examination or testing of evidence would be beneficial to Catlin in any manner. There was no suggestion that anything had occurred after the petition for writ of habeas corpus was filed necessitating the filing of the section 1054.9 motion.
The filing of the original petition for writ of habeas corpus in 2000 also is significant because, had there been important material missing from Catlin's trial counsel's files, Catlin would have been aware of the missing materials at that time since current counsel has not provided any information to suggest otherwise. Moreover, Catlin and his counsel must have known at the time the petition for writ of habeas corpus was filed that trial counsel did not number, index, or catalog the discovery received before and during trial. Clearly, by the time the original petition for writ of habeas corpus was filed, Catlin and counsel were aware of the difficulty in determining what discovery was provided to Catlin by the district attorney. Even if it were determined that it would not have been worthwhile to make a motion to determine if anything was missing from Catlin's trial counsel's files at that time, perhaps because of the burdensome procedures that would have been necessary, there is no reason a motion could not have been made when section 1054.9 became effective on January 1, 2003.
The only attempt to explain the delay provided by Catlin was that current counsel was not his primary counsel for writ purposes until May 2006. Current counsel explained that he did not make the section 1054.9 motion until August 2007 because he was becoming familiar with the file.
This argument is not persuasive. Catlin has been represented by counsel since before his trial. The appointment of new counsel 16 years after Catlin was convicted simply is not, in and of itself, a satisfactory reason to permit the filing of a section 1054.9 motion after a lengthy delay. If new counsel had uncovered new facts or developed new theories, then the change in counsel might become significant. As pointed out above, however, there is nothing in this case that would suggest the change in counsel was significant for any reason other than the change itself.
(7) The facts and circumstances of this case establish that the trial court did not abuse its discretion in determining that the section 1054.9 motion was not filed within a reasonable time period.

DISPOSITION
The alternative writ is discharged, and Catlin's petition for writ of mandate is denied.
Kane, J., concurred.
*144 DAWSON, J., Dissenting.
I dissent from the conclusion that footnote 2 of the opinion in In re Steele (2004) 32 Cal.4th 682, 692 [10 Cal.Rptr.3d 536, 85 P. 3d 444] (Steele) engrafts a timeliness requirement onto Penal Code section 1054.9.[1] The footnote can be read in at least three ways. First, it can be read to say that "any unreasonable delay in seeking discovery" will be considered when (and only when) the timeliness of "the underlying habeas corpus petition" is considered. (Steele, at pp. 692-693, fn. 2.) Second, it can be read to say that "any petition challenging the trial court's ruling" on a section 1054.9 motion, as well as "compliance with a discovery order must all be done within a reasonable time period" after the filing of a section 1054.9 motion. (Steele, at pp. 692-693, fn. 2, italics added.) Third, it can be read as does the majority.
Given this ambiguity in Steele, supra, 32 Cal.4th at pages 692-693, footnote 2, I must disagree with the conclusion that its language allows us to ignore the plain words used and not used by the Legislature in enacting section 1054.9. The section simply provides no time limit for making a motion.
Neither is the language of Steele's footnote 2 sufficiently clear, in my view, to allow us to ignore a legislative history that indicates the California Attorney General's Office, counsel for respondent here, opposed the enactment of section 1054.9 for precisely the reason that it contained no time limits on the making of the motions for which it provides. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Apr. 10, 2002, p. 4.) Thus, we know that the Legislature passed section 1054.9 without, and intended to pass it without, any timeliness requirement. I would take judicial notice of this legislative history, as requested by appellant. (People v. Taylor (2007) 157 Cal.App.4th 433, 437-438 [68 Cal.Rptr.3d 682].)
The legislative history of section 1054.9 also indicates that one of its purposes was to simplify and thus reduce the cost of the discovery process conducted in connection with habeas corpus petitions, particularly in capital cases. A staff report prepared for an April 23, 2002, hearing before the Senate Committee on Public Safety states that, according to the sponsor of the proposed legislation: "The problem that occurs all too often is this: a defendant's files are lost or destroyed after trial and habeas counsel is unable to obtain the original documents because the State has no legal obligation to provide them absent a court order. This leads to many delays and causes unnecessary public expenditures as prosecutors and habeas counsel litigate *145 whether the defendant can demonstrate a need to [obtain discovery]." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Apr. 10, 2002, p. 4.) The engrafting of a timeliness requirement on section 1054.9 discovery motions, where timeliness is already an issue that will be addressed and decided in connection with a decision on the petition for habeas corpus, simply will not serve the end of avoiding unnecessary delays and public expenditures; instead, it will add to the problem.
Perhaps, as the majority predicts, there will be ways of abusing the discovery rights granted by section 1054.9, just as there may be ways of abusing the habeas corpus writ. But it is not up to this court to legislate from the bench in order to solve such potential problems, particularly in contravention of the Legislature's evident decision not to use a timeliness requirement as a method of solution.
I would grant the petition.
NOTES
[1] We will refer to the victims by their first names, not out of disrespect but to avoid any confusion to the reader.
[2] All further statutory references are to the Penal Code unless otherwise stated.
[3] Catlin was not eligible for the death penalty because the murder occurred after the death penalty was found unconstitutional and before the revised death penalty statute was enacted.
[4] Section 1054.9 states in full:

"(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c), order that the defendant be provided reasonable access to any of the materials described in subdivision (b).
"(b) For purposes of this section, `discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial.
"(c) In response to a writ or motion satisfying the conditions in subdivision (a), court may order that the defendant be provided access to physical evidence for the purpose of examination, including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant only upon a showing that there is good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief. The procedures for obtaining access to physical evidence for purposes of postconviction DNA testing are provided in Section 1405, and nothing in this section shall provide an alternative means of access to physical evidence for those purposes.
"(d) The actual costs of examination or copying pursuant to this section shall be borne or reimbursed by the defendant."
[5] Since we follow the Supreme Court's lead, we deny Catlin's request that we take judicial notice of various items from the legislative history of section 1054.9.
[1] Further statutory references are to the Penal Code.