187 Cal.App.4th 1534 (2010)
114 Cal. Rptr. 3d 796
LOUIS BACA, Petitioner,
v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.
No. C062609.
Court of Appeals of California, Third District.
August 31, 2010.
*1537 Louis Baca, in pro. per., for Petitioner.
No appearance for Respondent.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Ward A. Campbell, Deputy Attorney General, for Real Party in Interest.

OPINION
BLEASE, Acting P. J.
Penal Code section 1054.9 allows a convicted defendant who has been sentenced to death or life in prison without the possibility of parole to obtain discovery materials "[u]pon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment."[1]
Petitioner Louis Baca, who is serving a life term, previously brought unsuccessful petitions for writ of habeas corpus in both state and federal court. He now seeks discovery materials in an attempt to file a third successive habeas corpus petition on issues decided in the previous writ proceedings.
Petitioner intends to file a third writ petition on the ground he had no intent to kill his victim, an issue that was established at trial by inference from his actions and the circumstances surrounding his actions. He seeks evidence for the ultimate purpose of showing he had no intent to kill his victim. He seeks all of the discovery ordered at trial, as well as the out-of-court statements of all witnesses. He hopes to show some discrepancy in the witness accounts that would prove irrefutably that he had no intent to kill. This issue was litigated at trial and was the objective of the ineffective assistance of counsel claims made and denied in his earlier writ petitions.
We shall conclude that a section 1054.9 discovery motion may be denied on the ground that the purpose of the section is to permit discovery of matters relevant to the prosecution of a writ on grounds not previously litigated and decided against the petitioner in prior habeas corpus proceedings.
Successive petitions for writ of habeas corpus relief are summarily denied absent justification. (In re Clark (1993) 5 Cal.4th 750, 797 [21 Cal.Rptr.2d 509, 855 P.2d 729].) The possible exceptions to this rulethe trial was so *1538 fundamentally unfair that no reasonable judge or jury would have convicted petitioner, or the petitioner is actually innocent of the crimedo not apply here. (Ibid.) Fundamental unfairness is not shown unless new evidence points unerringly to innocence or reduced culpability, and evidence is not new evidence if it merely conflicts with evidence presented at trial on an issue in dispute. (Id. at p. 798, fn. 33.) Actual innocence cannot be shown with evidence that a reasonable jury could have rejected. (Ibid.)
We shall conclude that such evidence is not new evidence and that it is not the sort of evidence that a reasonable jury could not have rejected. As such, Baca has no legitimate grounds for a third habeas corpus petition. Having already filed two unsuccessful petitions for writ of habeas corpus, his discovery motion is not "upon the prosecution of a postconviction writ of habeas corpus." We shall deny the writ.

FACTUAL AND PROCEDURAL BACKGROUND
The following summary of facts is from the magistrate's findings in Baca's federal writ petition.
"On March 13, Baca drove to Tracy to retrieve his gun from his cousin [Paulette Villa]. Another cousin Villa had never met had accompanied Baca from the Bay Area. Villa was angry Baca had endangered her children, but said nothing. Baca was angry the gun was scratched and he clearly expressed his displeasure. He was also upset because the gun seemed to be jammed. He asked her to take him to the store to buy beer. She obtained permission from her mother, with whom she and her three daughters were living.
"On the way to the store, Villa saw two young women, who were later identified as Marie Sturdivant and Celina Martinez, walking on the sidewalk with Celina's brother, David, whom they called `Pelon.' Villa thought they said something as she drove by so she made a U-turn to inquire. Villa pulled up alongside Celina, Marie and Pelon, at which time Baca jumped out of the car. He asked Pelon whom he was `dogging.' One of the young women asked who he was. Baca pulled out a gun and pointed it at their heads. Pelon said he did not want any trouble. Baca yelled something like `Decoto' or `Decoto Norte X4' and returned to the car....
"... Diane Gaarde, although accustomed to noise and violence in her neighborhood, was awakened by loud and angry male and female voices through her closed windows. She lay in her bed listening but could not understand any of the words spoken. She described the area as a no-man's land for gangs and confrontations.
*1539 "Meanwhile, Marie, Celina and Pelon walked on to the market. Although Pelon mentioned he did not like guns, the trio was rather nonchalant about the assault. They mentioned it to the store clerk but they did not call the police. As they walked back, they saw the same car again....
"As Villa passed the group a second time, Baca told her to turn around. She complied. Baca leaned out the window of the car and fired a shot at the three, who by then were running across a field. Pelon grabbed his side. He yelled at his sister and Marie to get down. They all dropped into the tall grass. Villa circled around and Baca fired two more shots. The ever-vigilant Mrs. Gaarde heard a female voice from the driver's seat, a male voice from the passenger seat and another male voice from the rear seat. She heard one of the males say, `I got him I got him' in a voice as jubilant as if he had just won the World Series. Pelon died as a result of a gunshot wound to the chest."
Baca was convicted of first degree murder in 1998 and sentenced to life in prison without the possibility of parole. We affirmed the judgment on June 6, 2000, and the Supreme Court denied review in October 2000.

A. State Habeas Corpus Proceedings

Baca petitioned the superior court for a writ of habeas corpus and argued he had received ineffective assistance of counsel. In pertinent part, Baca argued that his trial counsel failed to present expert testimony regarding his lack of intent to kill and failed to offer evidence regarding his chronic acute methamphetamine psychosis. The superior court rejected the petition. This court denied the petition in April 2002, and the Supreme Court summarily denied the petition on review.
In May 2001, during the time Baca was pursuing his state habeas corpus petition, his habeas corpus counsel wrote to his trial counsel asking for trial counsel's file. Trial counsel responded by sending only the "Howells report." Habeas corpus counsel "then conducted and completed [his] habeas corpus investigation."

B. Federal Habeas Corpus Petition

In July 2003, Baca filed a petition for writ of habeas corpus in federal court. The petition asserted ineffective assistance of trial and appellate counsel, violation of Miranda[2] rights, and juror bias and misconduct. The petition was denied in March 2006. Baca appealed to the Ninth Circuit, *1540 which affirmed the judgment. The United States Supreme Court denied his petition for writ of certiorari in January 2009.

C. Section 1054.9 Proceedings

In May 2009, Baca began for the first time to seek discovery materials under section 1054.9. He filed a motion for discovery in the trial court, which was denied. His petition for writ of mandate to this court was also denied.
Baca filed a second motion for discovery materials in July 2009, which the trial court summarily denied. Baca requested (1) the discovery order and all discovery ordered in his case, (2) all statements of witness Diane Gaarde, who testified at trial, (3) all statements of Margarite Gaarde, who did not testify at trial, (4) all statements of six other witnesses who testified at trial, (5) the attorney visit log book of the San Joaquin County Jail for Baca from 1997 to 1998 for the purpose of developing an ineffective assistance of counsel argument, and (6) the "investigation reports and findings of the law enforcement authorities listed in the original discovery order requested at trial."[3] This petition for writ of mandate followed.
Baca states that he is preparing a post-conviction writ of habeas corpus alleging ineffective assistance of counsel due to failure to investigate, to prepare and present a meaningful defense, to subject the prosecution's case to meaningful adversarial testing, and to effectively cross-examine. He also claims actual innocence of the first degree murder conviction.
He claims the discovery he seeks will assist him in showing that his trial counsel should have consulted with an expert in methamphetamine psychosis. Baca claims that if his trial counsel had consulted an expert in methamphetamine psychosis, such expert testimony might have prompted counsel to encourage Baca to testify in his own defense in order to explain that he harbored no intent to kill. Thus, Baca's ineffective assistance of counsel claim is tied to his claim that he had no intent to kill the victim.
He also claims that the statements of witnesses, which he has never examined, will allow him to compare his own knowledge of the events to the observations of the other witnesses, specific to his intent. He hopes to discover some evidence that he had no intent to kill the victim by comparing his "own knowledge and insight of the events to the evidence that was available before trial, i.e., other witnesses who claimed to have observed and/or heard specific events of this case."
*1541 Section 1054.9 contains a requirement that the petitioner show that good faith efforts have been made to obtain discovery from trial counsel. In this regard, petitioner presented a declaration from his habeas corpus counsel to his trial counsel requesting trial counsel provide his entire file. In response, trial counsel produced only one report. Petitioner also produced three letters he had sent to two different trial counsel requesting his file. He received no response to any of these requests. He declared that the materials were therefore lost to him.

DISCUSSION
Baca has the burden of showing that the trial court abused its discretion because it could have had no reasonable basis for its ruling. (Kennedy v. Superior Court (2006) 145 Cal.App.4th 359, 369 [51 Cal.Rptr.3d 637].) We will affirm the trial court's ruling absent such a showing.
The pertinent portions of section 1054.9 read as follows: "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall [with exceptions not relevant] order that the defendant be provided reasonable access to any of the materials. . . ."
(1) The statute defines "discovery materials" as "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at [the] time of trial." (§ 1054.9, subd. (b).) The Supreme Court has interpreted the statute to mean that materials are subject to disclosure only if they are currently in the possession of the prosecution and law enforcement authorities that were involved in the case. (In re Steele (2004) 32 Cal.4th 682, 695-696 [10 Cal.Rptr.3d 536, 85 P.3d 444] (Steele).) There is no duty to preserve material or to search for or obtain material not currently possessed. (Id. at p. 695.) However, "a reasonable basis to believe that the prosecution had possessed the materials in the past would also provide a reasonable basis to believe the prosecution still possesses the materials." (Barnett v. Superior Court (2010) 50 Cal.4th 890, 901.)
The materials to which the defendant is entitled are those to which he or she would have been entitled at the time of trial. (Steele, supra, 32 Cal.4th at p. 695.) This includes materials that were provided at trial but that the defendant can show have since been lost, materials to which the defendant was actually entitled at the time of trial, but did not receive, and materials that the prosecution would have been obligated to provide had there been a *1542 specific request at trial. (Id. at pp. 695-696.) The prosecution is compelled to disclose information to a criminal defendant (1) where there is a discovery order issued by the trial court at the time of trial, (2) where a statute imposes a duty to provide discovery, and (3) if there is evidence that is both favorable to the defendant and material to the issue of guilt or punishment. (Ibid.)
(2) We interpret section 1054.9 against the backdrop of the law pertaining to postconviction writs of habeas corpus, because section 1054.9 was enacted expressly for the purpose of enabling the prosecution of such a writ. In this case, Baca has already been denied habeas corpus relief in both state and federal courts. Not only does he not have a pending habeas corpus petition, but also, as we shall show, he cannot prepare another habeas corpus petition based upon the evidence he seeks.[4]
Baca's state habeas corpus petition raised his trial counsel's ineffective assistance, in part because of the failure to offer evidence of methamphetamine psychosis, which evidence he argues should have been admitted to negate an intent to kill. In the federal habeas corpus proceedings, the magistrate made extensive written findings on this issue. "Defense counsel was aware of the possible methamphetamine psychosis defense because he attempted to obtain a continuance to have an expert in that area prepare a detailed report for defense counsel to consider prior to the trial.... However, the record reflects defense counsel was aware that petitioner's alleged drug use was `a double-edged sword.... You argue to a jury, "Well, he was high," and . . . "Oh, not only is he a murderer, but he's a druggy, too."' . . . Defense counsel expressly stated that he only wanted to bring out petitioner's drug use if he had an expert prepared to come in and testify in a way that would benefit petitioner. . . . [¶] . . . Because the prosecution had strong evidence and petitioner had admitted to shooting the victim, it was not unreasonable for defense counsel to forego raising petitioner's methamphetamine use. [¶] In addition, petitioner has presented no evidence that drug tests were performed on petitioner on the day he was arrested. Petitioner has pointed to no testimony in the record that suggests petitioner was acting in a drug-induced manner during the events at issue herein, although admittedly defense counsel was attempting to keep out any reference to petitioner's methamphetamine use. The only declaration petitioner provided was his own self-serving statement that `[o]n the day in question [he] was completely high on crank, and . . . had just got done smoking a lot of it with [his] cousin, Anthony Baca, before arriving in Tracy.' . . . However, Anthony Baca testified that late *1543 in the day on the day of the murder, petitioner was acting `normal,' although he was drinking beer. . . . Petitioner has presented no other declarations or evidence substantiating petitioner's drug use at that time. [¶] Dr. Howells' report also confirms that `no medical verification has been made of [petitioner's] self-described long-term effects.' . . . [¶] . . . [¶] It appears that most of the evidence supporting a potential methamphetamine psychosis defense would be based on petitioner's self-serving statements concerning his drug use."
(3) Baca has already raised a claim of ineffective assistance of counsel, the same issue he claims to want to explore in his request for evidence, and he cannot raise the issue again in another habeas corpus petition. "It has long been the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected." (In re Clark, supra, 5 Cal.4th at p. 767.) Thus, having raised ineffective assistance of counsel in a habeas corpus petition in both state and federal courts, Baca may not file another habeas corpus petition raising this claim.
(4) In re Clark, supra, 5 Cal.4th at page 774, held that all known claims must be presented in a single, timely petition for a writ of habeas corpus, unless the petitioner alleges facts establishing that a fundamental miscarriage of justice occurred as a result of the trial. "[T]he general rule is still that, absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied. The only exception to this rule are petitions which allege facts which, if proven, would establish that a fundamental miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence." (Id. at p. 797.)
For purposes of a conviction of life in prison, a fundamental miscarriage of justice occurs when (1) the trial was so fundamentally unfair that no reasonable trier of fact would have convicted the defendant absent the error, (2) the petitioner is actually innocent of the crime charged, or (3) the conviction was obtained under an invalid statute. (In re Clark, supra, 5 Cal.4th at pp. 797-798.) Baca makes no claim that his conviction was obtained under an invalid statute.
(5) The type of evidence a petitioner must show to prove a fundamental miscarriage of justice is evidence that "`undermine[s] the entire prosecution case and point[s] unerringly to innocence or reduced culpability.'" (In re Clark, supra, 5 Cal.4th at p. 798, fn. 32.) Evidence that is relevant only to an issue already disputed at trial and which merely conflicts with trial evidence is not new evidence that fundamentally undermines the judgment. (In re Clark, *1544 supra, 5 Cal.4th at p. 798, fn. 33.) Evidence of actual innocence means more than evidence that might have raised a reasonable doubt as to guilt. This standard cannot be met with evidence that a reasonable jury could have rejected. (Ibid.)
The type of evidence Baca seeks by this motion does not constitute the sort of evidence that would justify a successive habeas corpus petition. The issue of Baca's intent to kill was litigated at trial. Since Baca admitted the shooting, his intent to kill was the sole contested issue at trial. Therefore, he cannot bring a successive habeas corpus petition raising this issue absent new evidence that fundamentally undermines the judgment and that does not merely conflict with trial evidence. (In re Clark, supra, 5 Cal.4th at p. 798, fn. 33.)
In ruling on the federal habeas corpus petition, the magistrate stated that Baca's acts were "more than sufficient to demonstrate intent to kill: he initially jumped out of Villa's [his codefendant's] car and threatened [the victims] by pointing his gun at their faces, he went to the trouble of unjamming his gun ostensibly so he could shoot someone, he and Villa returned to confront the three [victims] in the field, he pointed his gun at the victims as they ran, and, finally, after a shot was fired, Villa continued to drive around the field and petitioner shot the gun at least one more time."
(6) The evidence Baca seeks, i.e., the statements of witnesses and the police and investigative reports, is evidence that, at most, might raise a reasonable doubt as to guilt and produce only evidence that a reasonable jury could reject. The intent to kill is rarely susceptible to direct proof but must be inferred from the facts and circumstances surrounding the act. (People v. Dorsey (1969) 270 Cal.App.2d 423, 428 [75 Cal.Rptr. 658].) In light of Baca's actions, even his own contemporaneous statement expressly denying intent would not fundamentally undermine the judgment.
(7) For purposes of section 1054.9 there is no habeas corpus petition either contemplated or pending that would justify the postconviction discovery he seeks. This is so because a habeas corpus petition has already been filed and denied on the ground of ineffective assistance of counsel, and given the evidence of Baca's intent to kill the victim, the evidence he seeks would not justify a successive habeas corpus petition on an issue that was actually litigated at trial. The evidence Baca seeks of his intent to kill would not fundamentally undermine the judgment. For these reasons, we conclude the motion was not filed "[u]pon the prosecution of a postconviction writ of habeas corpus . . . ." (Pen. Code, § 1054.9, subd. (a).) The trial court's denial of the petition was not an abuse of discretion.

*1545 DISPOSITION
The petition for writ of mandate is denied.
Robie, J., and Cantil-Sakauye, J., concurred.
NOTES
[1] Further section references to an unspecified code are to the Penal Code.
[2] Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].
[3] We deny the writ on the procedural ground that the motion for discovery was not for the prosecution of a postconviction writ of habeas corpus. We therefore have no occasion to consider the particular merits of Baca's requests.
[4] The People argue that the motion for discovery was untimely, and that this second motion for discovery did not satisfy the requirements of a motion for reconsideration. We need not address these arguments. The question whether a section 1054.9 motion for discovery may be denied if not filed within a reasonable time period is currently pending before the Supreme Court in Catlin v. Superior Court (2008) 166 Cal.App.4th 133 [82 Cal.Rptr.3d 554], review granted November 19, 2008, S167148.