Filed 12/20/21  P. v. Kivett CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C093274 |
| Plaintiff and Respondent, | (Super. Ct. Nos. SCCRCRF201911971, SCCRCRF201917491, SCCRCRF20195651, SCCRCRRS20195161) |
| v. | |
| JOSEPH MICHAEL KIVETT, | |
| Defendant and Appellant. | |

In a global resolution of four cases, defendant Joseph Michael Kivett pled guilty to several charges and admitted a prior strike allegation in exchange for a stipulated sentence of 12 years and 8 months, dismissal of one of the cases and the remaining counts and enhancements in the other three cases, and the prosecution's agreement not to file charges against Stacy Phillips, defendant's wife. As part of his plea, defendant pled guilty to committing second degree robbery and false imprisonment against Anthony S. and Rachelle G., and attempting to prevent or dissuade Rachelle by force or implied threat of force or violence from reporting a crime as a victim or witness.

1

Pertinent to this appeal, defendant later filed a motion to withdraw his plea, arguing his motion was supported by good cause under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] and Penal Code[1] section 1054.1, subdivision (e) because the prosecution failed to provide him with impeachment evidence as to Rachelle and Anthony before defendant entered his plea.  The trial court denied the motion.

Defendant appeals the denial of his motion to withdraw his plea and asserts, "[g]iven the fact the alleged victims and the prosecution's central witnesses were recently involved in criminal activity, the prosecution was both constitutionally and statutorily required to disclose this information to [defendant] before he entered his plea."  Finding no merit in defendant's arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The substantive facts underlying defendant's convictions are irrelevant to the issue raised on appeal and are therefore not recounted here.  We recite only the background pertinent to our consideration of the trial court's denial of defendant's motion to withdraw his plea.

Defendant entered his plea on September 5, 2019.[2]  On October 8, at the sentencing hearing, defendant said he intended to file a motion to withdraw his plea.  The trial court responded it had concerns regarding the stipulated term of the plea because it appeared to be "an unusually generous disposition."  Thus, the trial court invited comment, explaining "it might expedite matters to get an opinion from the Court as to whether or not the Court will even approve this resolution that might obviate the need for a motion."

---

[1]     All further section references are to the Penal Code unless otherwise specified.

[2]     All further date references are to 2019 unless otherwise specified.

The prosecutor explained he had spoken with the district attorney "who made the offer" and her recollection was, among other things, "that there was quite extensive discussion with counsel and [another judge]. And part of those conversations included some significant issues and concerns about credibility of some of the witnesses, including the victims. And their testimony is quite important to a number of charges." Defense counsel added, among other things, that the preliminary hearing transcript was supposed to be the factual basis for the plea, but it appeared the police report was used instead. The trial court acknowledged the parties' comments and noted Anthony "is someone who does have some significant criminal history, . . . that would pose some issues with regard to credibility." The trial court stated it would tentatively follow the recommended sentence and scheduled a hearing on the motion to withdraw the plea.

Defendant filed his first motion to withdraw the plea on October 18, which was denied following the hearing on February 6, 2020. That motion is not at issue in this appeal; thus the specifics of that motion are not recounted here. Defendant filed his second motion to withdraw the plea on March 19, 2020, when he was representing himself in pro. per. In his declaration accompanying that motion, defendant stated the grounds for his motion were "the prosecutor's suppression of favorable evidence, and ineffective representation of counsel." (Underlining omitted.) As to the evidence suppression allegation, defendant stated that, on the date he entered the plea, the prosecution failed to disclose that Rachelle had pending charges from August 16 for receiving stolen property, burglary, identity theft, and possession of a controlled substance. This information, defendant declared, was impeachment evidence and, had he known about Rachelle's pending charges, he would not have entered his plea.

The prosecution opposed defendant's motion. As to the suppression of evidence claim, the prosecution noted defendant "refers to an incident that occurred on August 16, 2019," "[t]he district attorney's office did receive a police report for this incident," and "[t]he district attorney's office filed a case against Anthony . . . and Rachelle . . . as co-

3

defendants for this incident on October 9, 2019." The prosecution asserted both the United States Supreme Court and the California Supreme Court have "ruled that the government is not required 'to disclose material impeachment prior to entering a plea agreement with a criminal defendant.' " (Citing *United States v. Ruiz* (2002) 536 U.S. 622, 633 [153 L.Ed.2d 586, 597] and *In re Miranda* (2008) 43 Cal.4th 541, 582.) The prosecution further argued "it is very unlikely that the pending unadjudicated case against [Anthony and Rachelle] would have been admissible as impeachment evidence at trial."

The trial court denied the motion as to defendant's ineffective assistance of counsel argument; defendant does not appeal the trial court's decision on that ground. The trial court considered defendant's evidence suppression allegation in support of his motion to withdraw the plea at a separate hearing. During that hearing, defendant was represented by appointed counsel.

Defendant verbally asked the trial court to take judicial notice of three cases, including the case filed against Rachelle and Anthony. The trial court granted the request. Defendant further orally provided the trial court with the following pertinent timeline: charges were filed against defendant and Phillips in March; in May, defendant's counsel communicated with the then-prosecutor about Anthony's violation of probation; after receiving Anthony's probation violation petition and report, defense counsel "didn't feel like it would have any impact on [defendant's] case" and she conferred with defendant in that regard; on August 16 and 26, Anthony and Rachelle "allegedly engaged in activities which are now the subject of a criminal Complaint that has been filed"; defendant pled guilty on September 5; the complaint was filed against Anthony and Rachelle on October 9. Defendant argued the charges against Anthony and Rachelle "on their face allege crimes of moral turpitude" and "it is facially *Brady*." (Italics added.) Defendant asserted "that if he had known that [Anthony and Rachelle] were facing charges of this nature, he would not have pled to these charges. He would

4

have proceeded to trial, which is what he was scheduled to do the day that he entered his plea. His plea was entered at [a trial management conference]."

The prosecutor responded the prosecutor who had previously handled the case went on vacation on October 11 and left the district attorney's office a week later. As far as the prosecutor was aware, "the last report [in the case against Anthony and Rachelle] came in on September 19th, 2019." The prosecutor explained: "And so the case was -- you know, we didn't really have a case. We did actually have like an initial report, and some reports actually came in on [Anthony's] and [Rachelle's] case. I researched it during the week that the plea happened. But my review of our case files, it doesn't appear that anyone had even reviewed it. So I don't think [the prior prosecutor] knew about it. I didn't know about it.

"I know he and I at times had discussed the -- [Anthony's] case, as I knew he was preparing for trial, [the prior prosecutor] was. And I was fully expected to come in and just confirm the case when I showed up on September 5th. But [defense counsel] and I discussed, and she said she thought that [the prior prosecutor's] offer was too harsh.

"So I went back and I said I'll review it. So I spent an hour or so and I reviewed the case, and that's when I made my offer. . . . [¶] But we didn't even really know about it -- we didn't know about the case at the time of the plea. That being said, [the prior prosecutor] and I were in discussions, you know, throughout his handling of [Anthony's] case and all of [his] prior convictions. I don't think [Rachelle] had any. But there was a disclosure made by [the prior prosecutor]. So I think he made every effort and our office made every effort to discover, you know, crimes of moral turpitude of both defendants.

"But I guess overarching that is the issue of the *Ruiz* case, the [United States] Supreme Court case, that we're just not required to legally disclose impeachment evidence prior to a plea.

5

"Once the defendant pleads, then it's not -- I mean it's not that it doesn't matter, but it's not -- doesn't make the plea involuntary. That's what that case says." (Italics added.)

The trial court asked whether the prosecutor knew "what the ultimate resolution was for [Anthony] and [Rachelle]." The prosecutor explained the case had not yet been adjudicated and had been continued numerous times. The prosecutor noted Anthony's prior criminal history, which was disclosed to defendant prior to his plea. Defendant explained "it's never [Anthony] that was the focus. It was [Rachelle]. They were both alleged as victims, both separate victims. [¶] And so the addition of moral turpitude information about [Rachelle] was something that was never available. And so that is the part that's new and that is the subject of *Brady*." (Italics added.) The trial court asked the prosecution whether, prior to the plea, defendant was provided "any information about [Rachelle] having impeachment prior convictions, including crimes of moral turpitude?" The prosecutor responded the prior prosecutor was aware of Rachelle's cases before he left his employment and added: "But I would be also, I want to throw in, and I don't have anything to prove this, but I know that [Rachelle], even though she has some failures to appear, her and [Anthony's] case has been called in court numerous times on Tuesdays and Wednesdays when [defense counsel] and other public defender attorneys were here. So to us it was no big secret."

The trial court granted defense counsel's request for an in camera hearing to explain why the alleged *Brady* violation "would have made things different" and "why [defendant's] plea was not knowing or voluntary." Defense counsel thereafter argued: "At least in the discovery I received, some of the incidents are all in August. Some of the reports say closed in September. But at least one of the reports, the incident is in August and it was closed in August." She added: "So, I'm not suggesting that anybody saw this and suppressed it, but I'm suggesting that there's at least the appearance that they could have." The prosecutor responded "some new potential impeachment evidence came up at

6

the last -- you know, the last hour, if you will. And he didn't get that. But the People didn't know about it." The prosecutor argued *Ruiz* foreclosed defendant's *Brady* argument and, even if the impeachment evidence were available to defendant at trial, it would be inadmissible. Defense counsel responded "the [United States Supreme Court] did hold that the Constitution does not require the government to disclose material impeachment prior to entering into a plea agreement with a criminal defendant. But 1054.7 and 1054.1, which is the California statutory embodiment of *Brady*, do require that disclosure, and there's no impeachment exception. [Section] 1054.1 also does not have a *Ruiz* exception. [¶] So *Ruiz* is correct, but California has gone further, if that makes sense." (Italics added.)

The trial court said: "So it's hard to imagine a situation that was more, shall we say, impactful or possibly use the word 'coercive' in requiring him to make a decision at the time of [the] trial management conference to either go to trial, in which he would face accusers, one of whom appeared to be an unblemished witness in terms of criminal offenses. So the credibility of that person was not something that he could, with the information that he had, attack. So he had to make a decision at [the] trial management conference. [¶] So there's a real question about . . . voluntariness when he did not have information that would certainly inform his decision as to his ability to go forward. So I have a real concern there." After further argument by counsel, the trial court responded it would review the three cases discussed by counsel in greater detail and welcomed further points and authorities "because there's been some real disagreements on the fine points of these cases." The trial court set a follow-up hearing on the matter.

Prior to the follow-up hearing, the parties submitted supplemental briefs.[3] Attached to the prosecution's supplemental brief was the declaration of Deputy District

---

[3] Defendant cites the supplemental briefs but does not discuss or outline the content of the prosecution's brief, as discussed *post*.

7

Attorney Martha Aker. Aker declared "the electronic records of the district attorney's office" showed that "[o]n or about September 3, 2019, the Siskiyou County District Attorney's office received initial reports relating to two incidents involving theft crimes with suspect Rachelle . . . with incident dates of August 16, 2019 and August 26, 2019." She further declared, in pertinent part: "The reports were initially reviewed by me on September 10, 2019, but not filed until October 10, 2019 as further investigation was necessary. Among other problems, our office did not receive anything beyond a draft report from the Phoenix Police Department until September 13, 2019. We also did not receive a report from [the California Department of Justice] for a 'rushed' fingerprint analysis until September 19, 2019. There were other problems of proof that I am not going to describe because the case against co-defendants Rachelle . . . and Anthony . . . is still pending. I can say that we needed the [Department of Justice] fingerprint analysis completed by [the Department of Justice] to decide whether to charge felony vehicle burglary and vandalism charges against [Rachelle and Anthony] requested by the Yreka Police Department. Because the fingerprint results showed 'no match' for either [Rachelle] or [Anthony], we did not file such charges against them." Aker also declared defendant's trial was scheduled to begin on September 16.

At the follow-up hearing, the trial court denied the motion. The judge explained: "Well, I will note that there are several -- several different legal avenues, you might say, with regard to this issue. The *Brady* issue requires to -- for the purpose of establishing a violation requires that the evidence be favorable to the accused, that it be suppressed by the State either willfully or inadvertently and finally that prejudice ensued.

"With regard to the -- in particular the issue of prejudice, I am persuaded by [the prosecution's] points and authorities that, first of all, the likelihood that the impeachment evidence would even be admitted were the trial to go forward is low and the Court does not believe that prejudice did ensue.

8

"So as to that issue, the Court finds that the standard has not been met by the defense and for the other reasons stated in [the prosecution's] points and authorities the Court denies the motion." (Italics added.)

Defendant appeals.

## DISCUSSION

Section 1018 permits a defendant to move to withdraw a plea for good cause at any time before judgment is entered.[4] A defendant has the burden of demonstrating good cause by clear and convincing evidence. (*People v. Cruz* (1974) 12 Cal.3d 562, 566 [generally, defendant must show by clear and convincing evidence the plea was the result of mistake, ignorance, or any other factor overcoming exercise of free judgment].) A defendant must further show prejudice in that he, she, or they "would not have accepted the plea bargain had it not been for the mistake." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) A trial court's decision to grant or deny a defendant's motion to withdraw a plea is reviewed for abuse of discretion. (*People v. Mickens* (1995) 38 Cal.App.4th 1557, 1561.) Discretion is abused when a court acts in an arbitrary, capricious, or patently absurd manner, which results in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

Defendant appeals the trial court's denial of his motion to withdraw the plea based on the evidence suppression allegation only. In that regard, defendant generally asserts his motion was supported by good cause because the prosecution violated its duty to disclose impeachment evidence pursuant to *Brady* and section 1054.1, subdivision (e).

---

[4] Section 1018 provides in pertinent part, "[o]n application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

9

We note, however, defendant's argument on appeal principally focuses on the alleged *Brady* violation.

*Brady* concerns the prosecution's constitutional duty under the federal due process clause to disclose certain information to a defendant. (*Brady v. Maryland*, *supra*, 373 U.S. at p. 87 [10 L.Ed.2d at p. 218].) The United States Supreme Court held "the prosecution must disclose to the defense any evidence that is 'favorable to the accused' and is 'material' on the issue of either guilt or punishment." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7.) In that regard, "[e]vidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [Citation.] [¶] Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' " (*In re Sassounian* (1995) 9 Cal.4th 535, 544.)

The problem with defendant's reliance on *Brady* is that the United States Supreme Court has rejected defendant's federal constitutional claim in the context of entering a plea. (*United States v. Ruiz*, *supra*, 536 U.S. at pp. 628-633 [153 L.Ed.2d at pp. 594-597].) In *Ruiz*, the United States Supreme Court considered a Ninth Circuit Court of Appeals decision that "in effect held that a guilty plea is not 'voluntary' (and that the defendant could not, by pleading guilty, waive his right to a fair trial) unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted upon a trial." (*Id*. at p. 629 [153 L.Ed.2d at p. 595].) The court explained, "[w]e must decide whether the Constitution requires that preguilty plea disclosure of impeachment information." (*Ibid*.) The United States Supreme Court "conclude[d] that it does not" and the federal Constitution "does not require the Government to disclose material impeachment

10

evidence prior to entering a plea agreement with a criminal defendant." (*Id.* at pp. 629, 633 [153 L.Ed.2d at pp. 595, 597]).[5]

Defendant failed to address *Ruiz* in his opening brief (despite addressing it during oral argument in the trial court) and, in his reply brief, merely states our Supreme Court has not addressed or evaluated "the impact of *Ruiz* on California law." While that may be true (a contention we need not consider), *Ruiz* dealt a death knell to defendant's *Brady* argument under the federal Constitution and the trial court thus did not abuse its discretion in denying defendant's motion for lack of good cause in that regard.

Turning to defendant's alternative reliance on section 1054.1, subdivision (e), which was briefly mentioned in his opening brief, we note "the reciprocal discovery statute independently requires the prosecution to disclose to the defense, in advance of trial or as soon as discovered, certain categories of evidence 'in the possession of the prosecuting attorney or [known by] the prosecuting attorney . . . to be in the possession of the investigating agencies.' (§ 1054.1.) Evidence subject to disclosure includes '[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged' (*id.*, subd. (c)) and '[a]ny exculpatory evidence' (*id.*, subd. (e)). Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if

---

[5]    To the extent the People assert *In re Miranda* stands for the broad proposition that "prosecutors are not required to disclose impeachment evidence prior to entering a plea agreement with a criminal defendant," we disagree. (Citing *In re Miranda*, *supra*, 43 Cal.4th at p. 581.) In that case, our Supreme Court discussed *Ruiz* and explained the case before it was distinguishable because the undisclosed evidence was not merely material impeachment evidence but also evidence that "would have tended to exculpate petitioner by showing that another person did the killing." (*In re Miranda*, at p. 582.) The court then stated it would not decide "the broad question whether or to what extent the prosecution has a duty to disclose evidence favorable to a criminal defendant before the defendant pleads guilty." (*Ibid.*) In the accompanying footnote, the court explained, "[t]he question whether prosecutors must disclose material exculpatory evidence before entering into a plea bargain has been addressed in other states and in the federal courts." (*Id.* at p. 582, fn. 6.)

11

discovered or obtained within 30 days of trial. (§ 1054.7.)" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1133.) "If petitioner can show he has a reasonable basis for believing a specific item of exculpatory evidence exists, he is entitled to receive that evidence [under section 1054.1, subdivision (e)] without additionally having to show its materiality." (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901.)

At present, it remains an open question whether the phrase "[a]ny exculpatory evidence" in section 1054.1, subdivision (e) encompasses impeachment evidence. (See *Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 377-378.) Defendant makes no argument in that regard. Indeed, the totality of defendant's section 1054.1 argument in his opening brief consists of: (1) an assertion that "[t]he criminal reciprocal discovery statute, which obliges the parties to disclose certain facts, also helps to guide [the section 1018] inquiry" and "not only sets forth the People's duty to disclose *exculpatory evidence*, but it also implies certain factors to be considered in determining whether the defendant has, in fact, been afforded the rights intended by the Legislature and guaranteed by the federal Constitution" (italics added); (2) a heading, stating "[u]nder federal law, as well as the California criminal reciprocal discovery statute, the prosecution has a duty to disclose exculpatory evidence or evidence which is favorable to the defense, including impeachment evidence" (italics omitted); (3) a paragraph under the foregoing heading that generally sets forth the requirements of section 1054.1 and its subdivision (e), and that a violation of section 1054.1 is subject to the harmless error standard in *People v. Watson* (1956) 46 Cal.2d 818; and (4) a heading stating, "[u]nder both *Brady* and California law, appellant was entitled to information regarding pending criminal charges against the alleged victims before entering the plea"[6] (italics omitted).

---

[6] We note, in his reply brief, defendant appears to rely on *Morris* for the proposition that, under section 1054.1, subdivision (e), "the prosecution's duty to disclose all substantial material evidence favorable to an accused 'extends to evidence which may

Defendant presents no argument with associated reasoning applying section 1054.1, subdivision (e) to the facts of this case. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [we do not make arguments for an appellant and may disregard conclusory statements and arguments failing to disclose the reasoning by which we are asked to reach the conclusions asserted]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [we do not search the record on our own seeking error].) We surmise from the factual arguments *raised in defendant's opening brief*, however, that he believes the prosecution violated section 1054.1 because: (1) criminal charges *were pending* against Rachelle and Anthony at the time he entered his plea; (2) "[a]ccording to the prosecutor, at least one of reports [*sic*] regarding Rachelle's and Anthony's conduct was dated in August 2019 and reflects the matter as 'closed' in August, before [defendant] entered his guilty plea"; and (3) the "handling prosecuting attorney acknowledged that before leaving office, the previous prosecuting attorney was aware of Rachelle's pending case," citing page 355 in the reporter's transcript.

First, there is no *evidence* in the record that charges *were pending against Rachelle and Anthony on September 5*, when defendant entered his plea. The trial court took judicial notice of a complaint purportedly filed against Rachelle and Anthony on October 9,[7] well after defendant entered his plea. Second, the prosecutor did not make the statement that defendant attributes to her. It was *defendant's* counsel who said a report regarding Rachelle's and Anthony's conduct was dated in August and reflected the

---

reflect on the credibility of a material witness.' " (Citing *People v. Morris* (1988) 46 Cal.3d 1.) To the extent defendant asserts *Morris* supports this assertion, we disagree. In *Morris*, our Supreme Court discussed the scope of a defendant's *constitutional due process rights*; the court did not discuss or analyze a defendant's statutory rights under section 1054.1. (*Morris*, at p. 30.) Indeed, section 1054.1 was enacted two years after *Morris* was decided.

[7] The complaint filed against Rachelle and Anthony is not contained in the record on appeal.

matter as "closed" in August, before defendant entered his guilty plea. Defendant's counsel's argument is not evidence. (Evid. Code, § 140; *People v. Kiney* (2007) 151 Cal.App.4th 807, 815; *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 843.) Third and finally, while it may be true the prosecutor said the prior prosecutor was aware of the case against Rachelle before he left the district attorney's office, the prosecutor also explained the prior prosecutor was in the office *until October 11*, when the prior prosecutor took vacation. Thus, even if we treat the prosecutor's argument as an admission, *the portion of the record upon which defendant relies* does not establish that the prior prosecutor had information in his possession or knew of information in the investigating agency's possession implicating Rachelle and Anthony in the August incidents *prior to September 5*, when defendant entered his plea. We thus conclude there is no basis *in the arguments presented by defendant on appeal* to support the assertion the trial court abused its discretion in denying the motion to withdraw the plea on the ground of a section 1054.1, subdivision (e) violation.

None of the cases discussed in defendant's brief supports his argument. We fail to see the pertinence of *Patterson* given the facts presented in this appeal. In that case, the defendant sought to withdraw his plea on grounds of mistake or ignorance when he learned the plea rendered him subject to mandatory deportation. (*People v. Patterson* (2017) 2 Cal.5th 885, 889.) Our Supreme Court explained the defendant's motion was not categorically barred because he had received a section 1016.5, subdivision (a) advisement that "a criminal conviction 'may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' " (*Patterson*, at pp. 890, 898.) Instead, the trial court was vested with discretion under section 1018 to consider all factors necessary to bring about a just result, including factors bearing on the defendant's state of mind at the time of the plea to determine whether "the defendant would not have entered the plea had he or she understood the plea would render the defendant deportable." (*Patterson*, at p. 899.) Our

14

Supreme Court concluded the trial court erred in finding "that even if Patterson was unaware of the actual immigration consequences of his guilty plea, he could not, as a matter of law, show good cause to withdraw that plea because he had been advised that his plea 'may' have adverse immigration consequences." (*Id*. at p. 899.) Thus, the court "reverse[d] the judgment of the Court of Appeal and direct[ed] it to remand th[e] case to the trial court, so that the trial court [could] exercise its discretion to determine whether Patterson has shown good cause to withdraw his guilty plea on grounds of mistake or ignorance." (*Ibid*.)

Defendant discusses *Patterson* but fails to explain the pertinence of the case to the facts before us on appeal. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["citing cases without any discussion of their application to the present case results in forfeiture"].) We understand the general proposition of law espoused in *Patterson* but fail to understand how the case furthers defendant's cause on appeal. The good cause upon which the defendant relied in *Patterson* was his mistake and ignorance as to the impact of his plea on his immigration status, which thus required the court to consider what the defendant knew when he entered the plea. Here, the good cause upon which defendant relied in support of his motion was the prosecution's purported failure to comply with *Brady* and section 1054.1. The question is thus whether defendant proved the basis for his good cause by clear and convincing evidence. *Patterson* plainly is not analogous in that regard.

*Ramirez* also does not assist defendant. In that case, there was no question that the prosecution had ample opportunity to produce a supplemental police report containing direct exculpatory evidence to the defendant prior to the admission of his plea, but failed to do so. (*People v. Ramirez* (2006) 141 Cal.App.4th 1501, 1503, 1506.) The facts of *Ramirez* are thus appreciably different from the facts in this case where defendant relies on impeachment evidence rather than direct exculpatory evidence.

Because we find no basis in the arguments presented on appeal to conclude the trial court abused its discretion in denying the motion to withdraw the plea, we affirm.

DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Mauro, J.

16